Exhibit D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------X
DR. MAC TRUONG,

               Plaintiff,        Index No.: 604650/97
                              IAS Part 3
     -against-                  (Hon. Barry A. Cozier)

CHARLES SCHWAB
Member: SIPC, N.Y. STOCK EXCHANGE       *THIRD-PARTY DEFENDANTS'*
                                      *OBJECTIONS TO PLAINTIFF*
             Defendant,        *MAC TRUONG'S LONG ACCOUNTING*

----------------------------------------X
CHARLES SCHWAB & CO., INC.,

     Defendant and Third-Party
     Interpleading Plaintiff,

     -against-

TRAN DINH TRUONG, VISHIPCO LINES and
DAI NAM HANG HAI CONGTY VISHIPCO
LINE OF VIETNAM,

     Third-Party Interpleaded
     Defendants.
----------------------------------------X
STATE OF NEW YORK )
                   )ss.:
COUNTY OF NEW YORK)

       In accordance with the Court's April 3, 2000 Decision and Order (Cozier, J.S.C.) directing, among other things, that formal objections to plaintiff Mac Truong's long accounting be served within thirty (30) days after service thereof (the "April 3 Decision and Order"), the third-party defendants, Tran Dinh Truong, Vishipco Lines ("Vishipco") and Dai Nam Hang Hai Congty Vishipco Line of Vietnam ("Dai Nam") respectfully make the following submission:

## PRELIMINARY STATEMENT

1. This action centers around a dispute between the plaintiff Mac Truong and the third-party defendants with respect to the ownership of certain assets maintained under the custody and control of defendant/third-party interpleading plaintiff, Charles Schwab & Co., Inc. ("Schwab"). These assets are in the form of cash and securities (the "Interpleaded Assets") currently maintained in the following seven (7) separate accounts under Schwab's control (hereinafter, the "Interpleaded Accounts"):

   1. Vishipco Lines account (DT 9090-7712) (the "Vishipco Account");
   2. Dai Nam Hang Hai Congty Vishipco Line of Vietnam Account (DT 2664-3974) (the "Dai Nam Account");
   3. Mac Truong Account (DT 8932-5532) ("Mac's Account");
   4. Mac Truong IRA Account (DT 8932-5539) (the "IRA Account");
   5. Mac Truong Joint Account with Maryse Truong (DT 8932-5542)(the "Joint Account");
   6. Custodial Account for Thulinh Mac-Truong (5816-3378) (the "Thulinh Custodial Account");
   7. Custodial Account for Hugh Mac-Truong (5816-3382) (the "Hugh Custodial Account").

2. This action was commenced in or about September 1997. By order dated September 26, 1997, all of the Interpleaded Accounts were restrained pending further order of the court. The Court disposed of all of the parties' claims on the merits and

-2-

continued the restraint of the Interpleaded Accounts in the April 3 Decision and Order.

### THE APRIL 3 DECISION AND ORDER

3. During the summer of 1998, the parties made extensive submissions in support of their respective motions for summary judgment. The April 3 Decision and Order, a copy of which is annexed hereto as Exhibit A, (i) granted third-party defendants' motion for summary judgment on their cross-claims against plaintiff for breach of contract, conversion, breach of fiduciary duty and an accounting; (ii) denied plaintiff's motion for summary judgment and request for omnibus relief in all respects; (iii) declared Vishipco Lines and Dai Nam to be "the lawful owners of the interpleaded assets"; (iv) directed plaintiff to prepare and to serve a long accounting with all appropriate schedules attached for the seven (7) Interpleaded Accounts, with formal objections to be submitted within thirty (30) days of service of the accounting; and (v) directed that the long accounting be referred pursuant to CPLR §4317(b) to a special referee "to hear and determine, including the tracing of funds and computation of principal and interest to be allocated between the two corporate third-party defendants, as well as any surcharges and interest to be charged against plaintiff."

## *PLAINTIFF MAC TRUONG'S LONG ACCOUNTING*

4.   Plaintiff's submission consists of a sixty-eight (68) page long accounting affidavit together with seven (7) schedules, one for each of the Interpleaded Accounts.  The long accounting affidavit (sometimes referred to as the "Accounting Aff.") contains fourteen (14) documentary exhibits, many of which were submitted as part of the record on the parties' motions for summary judgment.  Each of the schedules contain plaintiff's narrative description or explanation of the status of the account, including a document entitled *Summary Report on Changes on Value of Assets*.  Each of the schedules contain selected account statements and correspondence relating to the accounts, though none of the schedules contains a complete set of account statements from the date that the account was opened during the fall of 1995 through September 1997 when the Interpleaded Accounts were frozen by the court.[1]

---

[1]   Plaintiff's long accounting is to cover "the period commencing January 13, 1977 through the present."  (April 3 Decision and Order, p. 25).  While the schedules for the Vishipco and Dai Nam Accounts contain many (but not all) of the relevant account statements, the schedules for the accounts in plaintiff's (and his family members') names contain only a handful of statements covering the relevant period August 1995 through September 1997.

-4-

*THIRD-PARTY DEFENDANTS' OBJECTIONS*

5. The narrative portions of plaintiff's purported accounting consist almost entirely of self-serving allegations and legal argument, all of which have previously been rejected on the merits by the Court in the April 3 Decision and Order (April 3 Decision and Order, p. 23). Notwithstanding plaintiff's jaundiced view of the procedural history of this case and his overzealous effort to recast the court's dispositive findings on the merits, the following facts are immutable[2] for the purposes of this accounting:

 1. Vishipco and Dai Nam are the lawful owners of all of the Interpleaded Assets, subject only to the further order of the Court based upon the results of this accounting (April 3 Decision and Order, p. 23 and the second decretal paragraph on p. 24);

 2. All of the assets contained in the Vishipco Account and Dai Nam Account derive entirely from plaintiff's collection and liquidation of property belonging to Vishipco and Dai Nam (*See*, Schedule 1, p. 1 (Origin and Ownership

---

[2] While plaintiff has filed a Notice of Appeal from the April 3 Decision and Order, the appeal has not been perfected. Plaintiff's informal efforts to have Justice Cozier reconsider the April 3 Decision and Order have been rejected by the Court.

-5-

of Assets) and p. 2 (Short History on Origin of Assets); Schedule 2, p. 1 (Origin and Ownership of Assets) and p. 2 (Short History on Origin of Assets). These Interpleaded Assets have always been maintained by Mac Truong in accounts under the name Vishipco and Dai Nam, and Schedules 1 and 2 demonstrate clearly that these accounts originated entirely from assets held entirely for the benefit of Vishipco and Dai Nam, and do not contain any of plaintiff's personal funds. *Id.* Plaintiff's only claim to these Interpleaded Assets is based upon his allegation that he -- rather than Vishipco and Dai Nam -- is entitled to the appreciation in value from the time that they were collected and/or liquidated in the early 1980's to the current date (Accounting Aff. pp. 3-7; 9-10; Schedule 1, pp. 9 and 12; Schedule 2, p. 3).

3. With respect to Mac's Account, the Joint Account and the Thulinh and Hugh Custodial Accounts, there is no question that (i) these accounts did not exist prior to August 1995 (Schedule 3, pp. 1-2; Schedule 5, p.1;

Schedule 6, p. 1; Schedule 7, p. 1); and (ii) each was funded entirely[3] with assets that were previously held in three accounts at Merrill Lynch in the name of Vishipco and Dai Nam (Account Nos. 852-06543, 852-07B22 and 852-07B21).[4] Mac Truong does not dispute the fact that each of these four (4) Interpleaded Accounts derive entirely from the assets which he collected on behalf of Vishipco and Dai Nam pursuant to a 1977 agency agreement and short-form powers of attorney. He asserts only that these funds belong to him as a commission for his efforts which he paid to himself in August 1995 with the third-party defendants' consent. (Accounting Aff. pp. 13-15).

4. With respect to Mac Truong's IRA account, plaintiff concedes that in or about November 1995 he borrowed $30,000 from this account, which he "paid back" (plus an additional

---

[3] The August 1999 statement for Mac's Account indicated that there was an $11.25 balance before the transfer from Merrill Lynch. The November 1995 statements for the Thulinh and Hugh Custodial Accounts reveal that there were balances of $12,097.31 and $8,526.46, respectively, prior to the transfers from Mac's Account in November 1995.

[4] These funds were first transferred into Mac's Account and then journaled out to these respective accounts.

$4,000 for his 1995 and 1996 contributions) from his personal account (8932-5532) (Schedule 4, p. 1). There is no question that this $34,000 "repayment of loan" derives entirely from the monies previously maintained in the Vishipco and Dai Nam accounts at Merrill Lynch which were transferred to Mac's Account in August 1995 allegedly as "payment of his commission. (Schedule 4, p.3)."

a. *Plaintiff Does Not Account For Transfers From the Interpleaded Accounts From August 1995 Through September 1997*

6. As of September 26, 1997, all of the Interpleaded Accounts had been frozen by Court Order, and have remained so since that date. However, plaintiff must account for each of the Interpleaded Accounts from in or about August 1995 when they were first funded from the transfers from Merrill Lynch through and including the effective date of the court's restraining order (See, April 3 Decision and Order, p. 25).

7. During the pendency of this case, plaintiff has made several applications to have released all or a portion of the Interpleaded Assets from the court's restraining order. In the course of responding to these applications, Schwab has provided its own analysis of the activity in the Interpleaded Accounts during

this relevant time period. The most detailed of these accounts is offered by Schwab's counsel, Eamonn F. Foley, Esq. in his October 16, 1997 affirmation which is replete with account statements and copies of computer screens to support his analysis. A copy of Mr. Foley's affidavit with exhibits is annexed hereto as Exhibit B.

       8.    The purpose of Mr. Foley's affirmation was "to document the movement of assets from these three [Merrill Lynch] accounts, into which the disputed assets were initially transferred, into four (4) accounts at Schwab that are owned or controlled by the plaintiff [Mac Truong's personal account, his joint account with Maryse Mac-Truong and the two custodial accounts for Thulinh and Hugh Mac-Truong]." (Foley Aff. ¶4). Among other things, the Foley affidavit traces the movement from the three (3) Merrill Lynch accounts in the names of Vishipco Line and Dai Nam into Mac's personal account, and ultimately into the other accounts in his or family members' names. (Foley Aff. ¶¶6-17).

       9.    Mr. Foley's analysis also reveals certain critical information relating to the withdrawal of monies from the Interpleaded Accounts from August 1995 through September 1997. In particular, Mr. Foley states at ¶18 of his affidavit that:

> The account statements for the Mac Truong personal account reveal that since October 1995, he has drawn Schwab One checks totaling in excess of $81,000 on his personal account. In addition, the account statements for Mac Truong's joint account reveal that since October 1995, he or Maryse Mac-Truong have

-9-

drawn Schwab One checks totaling in excess of $62,000.

10. Unfortunately, Plaintiff's schedules for these two accounts do not contain most of the monthly account statements during this critical period. Based upon Schwab's analysis, we know only that checks were drawn on these two interpleaded accounts for sums in excess of $143,000. Plaintiff has provided nothing by way of explanation as to how or why these sums were diverted, and we have been unsuccessful in obtaining copies of the checks through Schwab.

11. Consistent with Schwab's analysis, the Summary Report on Changes of Value of Assets provided as part of Schedules 3 (Mac's Account) and 5 (the Joint Account) do reflect significant withdrawals by plaintiff during the periods December 31, 1995 through December 31, 1996[5] and September 1997 through December 1997[6], totaling for the two accounts a reduction in value in a sum exceeding $185,000. Plaintiff has expressly stated in his long accounting that he views these funds to be his own, and beyond the scrutiny of this proceeding. We respectfully submit, however, that

---

[5] During this one year period, these two accounts were depleted by the aggregate sum of $78,725.12.

[6] Plaintiff's schedules reflect that these two accounts decreased by the aggregate sum of $106,351.54. Though the schedules show this decline in value between September and December, 1997, we can safely conclude that these transfers were made in September only, since both accounts were restrained as of September 26, 1997.

neither the funds currently contained in the Interpleaded Accounts nor the money removed from them prior to the court's restraining order belong to plaintiff under the Court's April 3 Decision and Order.

b. *The Interpleaded Funds Contained in the IRA Account In Large Part Belong To The Third-Party Defendants*

12. By plaintiff's own admission, $34,000 of the monies derived from the Vishipco and Dai Nam assets were transferred into his IRA account in January 1996, as part contribution and part repayment of loans (Schedule 4, p.1). Using plaintiff's own December 31, 1995 value of $115,240.25 as a base line (*See*, Schedule 4, p.4, Summary Report on Changes of Value), the January transfer in the sum of $34,000 is almost precisely twenty-five percent (25%) of the total value of the IRA Account. Thus, at a bare minimum, approximately $96,000 of the May 31, 2000 balance in the account (25%) is directly traceable to the Vishipco Line and Dai Nam assets.

13. We respectfully submit, however, that the entire IRA account should be considered part of the Interpleaded Assets belonging to the third-party defendants since plaintiff is unable or unwilling to account for between $143,000 (according to Schwab) and $185,000 (according to Schedules 3 and 5) removed from the Interpleaded Accounts during the period August 1995 through September 1997.

-11-

c.  *Mac Truong Has Not Accounted For Pre-August 1995
    Transfers From The Vishipco Line and Dai Nam Accounts*

14.  In support of his claim to the Interpleaded Assets (already rejected by the Court), the plaintiff relies heavily upon the issuance of certain licenses by the Department of Treasury in the 1980's. Interestingly, however, plaintiff virtually ignores the licenses for purposes of accounting for the assets prior to his transfer of the funds to Schwab in 1995.

15.  There is at least one documented instance in which substantial sums collected by plaintiff on behalf of the third-party defendants were released from blocked accounts to pay Mac Truong and his attorneys. Annexed as Exhibit 2 to Mac Truong's long accounting affidavit is a copy of a license issued by the Office of Foreign Assets Control ("OFAC") of the Department of the Treasury, License No. B-91-289 dated March 12, 1986, which approves the payment of $25,584.58 to the law firm of Boal Doti & Larsen <u>and the payment of $20,942.78 to Mac Truong</u>. Though these distributions total twenty percent (20%) of the $227,178.89 corpus of Vishipco Lines' account, no mention is made of these payments by the plaintiff. By letter dated April 16, 1987, the Department of the Treasury confirmed the disbursement of these payments pursuant to the OFAC license in the context of addressing plaintiff's request for a further distribution of funds to him from the

Vishipco accounts. A copy of this correspondence is annexed hereto as Exhibit C.

16. Thus, plaintiff does not account for distributions in excess of $46,000 -- a full twenty percent (20%) of plaintiff's recovery of Vishipco's assets from Chase Manhattan Bank. Even assuming a rate of growth substantially more modest than the extraordinary appreciation in value of the rest of the assets, these unaccounted for sums would today be worth several hundred thousand dollars.

*CONCLUSION*

17. Plaintiff's long accounting is deficient in several important respects. First, it does not contain a complete set of account statements for any of the Interpleaded Accounts. Nor does plaintiff make any attempt to account for the substantial withdrawals from these accounts during the period August 1995 through September 1997 when they were frozen by court order. Moreover, plaintiff's analysis of the accounts in the name of Vishipco and Dai Nam prior to the transfers to Charles Schwab in 1995 is demonstrably incomplete and almost entirely undocumented. Plaintiff makes no effort to explain the disposition of any of these funds pursuant to licenses issued by the Department of the Treasury, including License no. B-91289 as discussed above.

18. Substantively, plaintiff's accounting contains glaring concessions which under the Court's April 3 Decision and Order warrant a finding that all of the assets contained in the seven (7) Interpleaded Accounts belong to the third-party defendants. Each of the Interpleaded Accounts -- except for a portion of Mac Truong's IRA account -- can be traced directly to the funds transferred from the three accounts previously maintained by plaintiff at Merrill Lynch in the names of Vishipco and Dai Nam. There is no evidence whatsoever that plaintiff's personal funds were added to or commingled with the Interpleaded Assets in these six (6) accounts. Again, the only funds which can be partially traced to plaintiff's own personal assets are approximately $115,000 in plaintiff's IRA account as of December 1995, and perhaps a small prior balance in the custodial accounts.

19. Though plaintiff has asserted new legal theories as to why he should be entitled to the interest, dividends and other considerable appreciation of the Interpleaded Assets over the years, he does not dispute the essential fact that all of these funds emanate directly from the assets which he, as agent for the third-party defendants, collected and liquidated in behalf of Vishipco and Dai Nam.

20. If an evidentiary hearing is warranted at all, it should be limited to the issues of (i) plaintiff's unexplained withdrawals from the Interpleaded Accounts from August 1995 to

September 1997; (ii) the extent to which plaintiff claims to have commingled his own assets in the Interpleaded Accounts; and (iii) the nature of the considerable disbursements made to himself and others prior to August 1995. We respectfully urge that there are no other factual issues which warrant a hearing with respect to third-party defendants' entitlement to all of the Interpleaded Assets.

Dated:  July 19, 2000
        New York, New York

                                    LEVY BOONSHOFT & SPINELLI, P.C.

                                    By: _____
                                        DAVID M. LEVY (DML 7255)
                                        Attorneys for Third-Party
                                        Interpleaded Defendants
                                        477 Madison Avenue - 14th Floor
                                        New York, New York 10022
                                        (212) 751-1414

T:\LIB2\TRAN.DOC\OBJECTIONS TO ACCOUNTING 7-7-00.wpd