Exhibit G

1

1　SUPREME COURT OF THE STATE OF NEW YORK
　　COUNTY OF NEW YORK:TRIAL TERM PART 27
2　————————————————————————————

3　DR. MAC TRUONG,

4　　　　　　　　　　　　Plaintiff,　　　　Part No.

5　　　　　　-against-　　　　　　　　　17084

6

　　CHARLES SCHWAB
7　Member:　SIPC, N.Y. STOCK EXCHANGE,

8

9　　　　　　　　　　　　Defendant.

10　————————————————————————————

11　CHARLES SCHWAB & CO., INC.,

12　　　　　　　　　　　Defendant and Third-Party
　　　　　　　　　　　　Interpleading Plaintiff,
13
　　　　　　　　-against-
14

15　TRAN DINH TRUONG, VISHIPCO LINES, AND
　　DAI NAM HANG HAI CONGTY VISHIPCO,
16　LINE OF VIETNAM,

17　　　　　　　　Third-Party Interpleaded Defendant.

18　————————————————————————————

19　　　　　　　　　　Index No. 604650-97
　　　　　　　　　　　60 Centre Street
20　　　　　　　　　　New York, New York
　　　　　　　　　　　April 29, 2002
21　B E F O R E :

22　　　　THE HON. IRA GAMMERMAN, JSC

23

24

25

1

2    A P P E A R A N C E S:

3      For the Plaintiff:

4        STEVEN A. HERSHKOWITZ, P.C.
         350 Broadway, Suite 1202
5        New York, New York 10013
         226-9200 (FAX:6830)

6

7      For the Defendant and third-party
       Interpleading Plaintiff Schwab:

8
         LAYTON BROOKS & HECHT LLP
9        400 Park Avenue - 6th Floor
         New York, New York 10022
10       By:  Eamonn F. Foley, Esq.
         980-8500 (FAX:9618)

11

12     For the Third-Party Interpleaded Defendant:

13
         LEVY BOONSHOFT & SPINELLI, P.C.
14       477 Madison Avenue
         New York, New York 10022
15       By:  Nicholas H. Gilbo, Esq.
         413-7340 (FAX:751-6943)

16

17

18

19

20

21

22

23

24   Sara C. Stanley, CSR RPR
     (212) 374-8133
25

Proceedings                                    3

1        THE COURT:  This case is 17084.

2            I had indicated when we were last together,

3    and if I could find the note I'll tell you when that

4    was -- the 17th -- that I would give Dr. Truong until

5    today to arrange for the return of the shares and the

6    money that was, in my view, improperly removed in

7    violation of my order, and if he didn't do that I was

8    going to ajudge that he was in contempt and would

9    arrange for his incarceration until he complied with

10   the order.

11           I understand he has not done that.  Is that

12   correct?

13       MR. HERSHKOWITZ:  Judge, I have several

14   applications.

15       THE COURT:  Say whatever you want, of course.

16       MR. HERSHKOWITZ:  Thank you very much.  With

17   the Court's indulgence, the applications range from the

18   technical to the substantive.

19           The overall picture is that before your Honor

20   should take this kind of action, I think the fair thing

21   to do is to hear from Dr. Truong.

22       THE COURT:  He has a lawyer.  I don't hear

23   from litigants when they have lawyers.

24       MR. HERSHKOWITZ:  You're finding scienter

25   here, and I think that refers to --

Proceedings                                    4

1          (Whereupon Proceedings paused.)

2          THE COURT:  Go ahead.

3          MR. HERSHKOWITZ:  Very well -- arguing then on

4    behalf of Dr. Truong, I still think the Court should

5    conduct a hearing to hear from him.

6          THE COURT:  I don't think it's necessary.  Go

7    ahead.

8          MR. HERSHKOWITZ:  The Court had found

9    contempt, with all due respect, it seems to be a bit

10   precipitously.

11         It accepted Schwab's conclusions as to what

12   the relevant facts were and what the import of those

13   facts were.

14         For example, there was a transfer instituted

15   by Dr. Truong's son who -- out of his account -- Schwab

16   says that's Dr. Truong's transfer of funds.  It was

17   not.  The Court accepts that conclusion.  These are

18   questions of fact.

19         THE COURT:  All I have said is that could not

20   have been accomplished without his participation.

21         MR. HERSHKOWITZ:  The degree of his

22   participation did not establish a material breach of

23   the order to which he is bound.

24         THE COURT:  Nonsense.

25         MR. HERSHKOWITZ:  If he attests to the age of

Proceedings                          5

1    his son, who is now of majority, so that his son can

2    take his own money, how is that affecting the transfer

3    of funds?

4              THE COURT:  Anything else you want to say?

5              MR. HERSHKOWITZ:  Yes.

6              Dr. Truong argues, as a trustee of his son's

7    accounts, he was obligated, as a matter of law, to

8    simply attest that his son had become of age and that

9    that is all he did.

10             THE COURT:  He knew very well that by doing

11   that, that would permit the withdrawal of the funds or

12   the shares or the units, whatever they are called.

13             MR. HERSHKOWITZ:  What do you want to say?

14             (Whereupon the defendant conferred with his

15   attorney.)

16             (Proceedings returned to open court and on the

17   record as follows:)

18             MR. HERSHKOWITZ:  Judge, with all due

19   respect --

20             THE COURT:  No, absolutely not.

21             MR. HERSHKOWITZ:  For the record, Judge.

22             THE COURT:  Go ahead.

23             MR. HERSHKOWITZ:  We argue that it is

24   undisputed that in June , 1999 a consent order by which

25   Dr. Truong agreed to let Schwab continue to not

Proceedings                          6

1    distribute assets in his accounts was executed

2    including Hugh's custodial account.

3            We further argue that on July 12th, 2002,

4    Dr. Truong filed for bankruptcy and became a Debtor in

5    Possession, that is DIP, and therefore Trustee of his

6    own estate, which is to say that he had the right,

7    notwithstanding the restriction order, pursuant to

8    Bankruptcy Code Section 542(b), 543(b), etcetera, to

9    request Schwab to turn over all assets in which the

10   debtor had an interest, something which Dr. Truong did

11   about August  of 2,000.

12           Hence there were several written requests by

13   the Debtor in Possession Mac Truong, the plaintiff,

14   directing Schwab to transfer assets out from Schwab to

15   the Debtor in Possession to be held in another bank,

16   such as E*Trade.

17           Further, Schwab opposed and cross moved in the

18   Bankruptcy Court to not only have the right --

19           THE COURT:  Excuse me for a moment.

20           (Whereupon Proceedings paused.)

21           THE COURT:  Go ahead.  I'm sorry.

22           MR. HERSHKOWITZ:  Schwab opposed and cross

23   moved the Bankruptcy Court to not only have the right

24   to continue to hold on to the assets, but also to

25   punish the Debtor in Possession for having made several

1    requests to transfer assets out from Schwab to E*Trade.

2              Further, of course, the Debtor in Possession

3    opposed Schwab's said cross motion to sanction him.

4              Further, about December , 2,000, plaintiff's

5    motion to direct Schwab to turn over assets to him was

6    withdrawn by Mr. Yablonsky, who is Dr. Truong

7    bankruptcy attorney, and Schwab's cross motion to

8    sanction the Debtor in Possession for having repeatedly

9    requested Schwab to transfer out the assets, that

10   motion was dismissed.

11             Parenthetically, obviously the Bankruptcy

12   Court could not sanction a trustee who had only

13   exercised his power under the Law to request Schwab to

14   do what the Law directed it to do.

15             At best, Schwab had the right or rather a

16   valid excuse to deny Dr. Truong's request as Debtor in

17   Possession, alleging that the Debtor in Possession had

18   consented to have it restrict his accounts before.

19             In December  of 2,000, Schwab was granted, on

20   the Debtor in Possession's consent, the right to

21   continue said stipulated order not to distribute the

22   assets in which the Debtor in Possession had an

23   interest.

24             Further, about May  of 2001, Hugh, turned 18,

25   and opened an account with Schwab without having

1    anything to do with the Debtor in Possession, Mac

2    Truong.

3            Schwab opened it without the Debtor in

4    Possession's request or authorization.

5            However, Hugh, thereafter requested and

6    authorized in writing that Schwab transfer his assets

7    in his custodial account to his new account as an

8    adult.

9            For this transfer to be lawful, there must be

10   the consent of Hugh, of Schwab, and of the Debtor in

11   Possession.

12           However, the consent of all three necessary

13   parties was given by all of them, and manifested by the

14   Letter of Authorization.  That's the transferred

15   instrument that your Honor has reviewed in LOA to

16   transfer assets between Schwab accounts duly signed by

17   Hugh as the beneficiary of the custodial account, and

18   by Mac Truong as the custodian of the account.

19           Further, said LOA, Letter of Authorization,

20   was then used by Schwab, and Schwab transferred Hugh's'

21   assets in his prior custodial account to Hugh's new

22   adult account.

23           This was the extent of what the Debtor in

24   Possession did, authorizing Schwab to transfer Hugh's'

25   assets in his prior custodial account to Hugh's' new

Proceedings                              9

1      adult account at Schwab.

2              We argue that the act of the Debtor in

3      Possession was legal and lawful, and that it cannot be

4      used against him for any purposes for the following

5      reasons:

6              The restriction order was one obtained by

7      Schwab upon the Debtor in Possession's consent, hence

8      it is true, that once agreed to, the Debtor in

9      Possession did not violate it.

10             However, a transfer of assets upon the express

11     consent of the parties to the agreement is a lawful

12     modification of the order, and not a violation thereof.

13             Had plaintiff transferred said assets without

14     Schwab's consent, plaintiff would have violated the

15     order.

16             Here, Schwab had done it upon the Debtor in

17     Possession's authorization, hence the Debtor in

18     Possession cannot sue Schwab for any violation of the

19     order, but nor can Schwab sue the Debtor in Possession

20     for any violation thereof.

21             Actually, there was a valid modification of

22     the order, but not a violation of that order.

23             Any party who may claim that there was a

24     violation from which it suffered damages, must or may

25     sue, but not Schwab or plaintiff, especially against

Proceedings                                    10

1      each other.

2                 Further, concerning plaintiff's consent not to

3      contact Schwab except through counsel, plaintiff argues

4      that this is a trivial, which is to say not a material

5      breach, in that it did not cause any damage; nothing

6      legal has been done,.

7                 In addition, the agreement of plaintiff,

8      Dr. Mac Truong, did not bind the Debtor in Possession,

9      Mac Truong, who pursuant to Bankruptcy Code is the

10     trustee of his estate, and may  sign an authorization

11     form requested by Hugh and Schwab, if he so deemed it

12     appropriate.

13                The Debtor in Possession did not have to get

14     Schwab's attorneys' authorization to do so.

15                This issue of whether requests made by the

16     Debtor in Possession to transfer assets was cause to

17     sanction the Debtor in Possession was raised and

18     dismissed.

19                In light of the foregoing, the second transfer

20     in June of 2001 of Hugh's' assets in his adult account

21     in Schwab to his adult account at D.T. Waterhouse was a

22     violation of the order, it can only be so because of

23     Schwab's failure to have obtained the Debtor in

24     Possession's consent first.

25                Therefore, had the Debtor of Possession, Mac

Proceedings                                  11

1    Truong, consented or authorized such transfer, it would

2    have been a completely lawful modification of it, and

3    not a violation thereof, since it had obtained the

4    necessary consent of all the concerned and competent

5    parties.

6              As a note, Levy as a would-be creditor or even

7    a genuine creditor of the Debtor in Possession's

8    estate, had no say or authority or no standing, I

9    assume, to give his consent in this matter.

10             Also, since Levy's standing is not finally

11   determined at this point, and by that I mean Truong and

12   Truong's standing is not finally determined vis-a-vis

13   Vietnam, it would be suggested that the matter should

14   not be litigated piecemeal at this point, without first

15   determining the issues of ownership between and as

16   between those parties.

17             Finally, the Bankruptcy Code Section s 542(b)

18   and 543(b), et cetera, gave to the Debtor in Possession

19   the right to have the assets returned to him, or I

20   should say to the Bankruptcy Court.  Only Schwab and

21   the Debtor in Possession's respective consents were

22   needed to make any transfer of assets held by Schwab,

23   make it legal or make it a lawful modification, and

24   therefore not a violation by the competent parties to

25   the order allowing Schwab to restrict the distribution

Proceedings                                    12

1      of the Debtor in Possession's assets.

2              It is therefore somewhat spurious that Schwab,

3      who had made the transfer voluntarily, filed the

4      complaint that the Debtor in Possession had violated

5      the order by having ordered and authorized it.

6              There was no authorization by the Debtor in

7      Possession for the transfer out of the assets, and even

8      if there had been one, nothing illegal had been done by

9      either Schwab or Hugh or the Debtor in Possession.

10             Indeed, Schwab had the power to transfer out

11     the assets which had been restricted upon the Debtor in

12     Possession's consent and upon his authorization.

13             Therefore, in this matter, only the Debtor in

14     Possession can be heard to complain.

15             THE COURT:  Okay.

16             MR. HERSHKOWITZ:  Just to nail at one of the

17     points, Schwab does not have completely clean hands in

18     this matter.  They participated and they likely did

19     incur some technical violation of the Bankruptcy stays

20     by doing so.

21             THE COURT:  Counselor, the money in the

22     custodial account is money that your client collected

23     which is -- and there's certainly a dispute as to who

24     that money belongs to, whether it belongs to him,

25     whether it belongs to the Government of Vietnam, or

Proceedings                                    13

1    whether it belongs to these one or more shipping lines

2    or private companies.

3           MR. HERSHKOWITZ:  Your Honor --

4           THE COURT:  Let me finish.  I let you finish.

5           MR. HERSHKOWITZ:  Thank you.  Yes, you did.

6           THE COURT:  My order was to make sure that no

7    moneys from any of those accounts were removed.

8           Your client violated that order.  And unless

9    the money goes back or the units go back, I'm going --

10   I hold him in contempt -- and I'm going to confine him

11   appropriately until he complies with the order.  That's

12   it.

13          I'm directing the attorney for Schwab to bear

14   an appropriate arrest order and warrant, and that's

15   what I plan to do.

16          And you have an exception to my ruling.

17          And he still has a little time because I

18   haven't signed the order and the warrant, but once

19   that's done, the dye is cast, and he's going to be

20   incarcerated until that money is restored or those

21   units are restored or both.

22          MR. HERSHKOWITZ:  If you will indulge me one

23   moment, I must make a technical argument.

24          THE COURT:  Go ahead.

25          MR. HERSHKOWITZ:  On the face of the order

Proceedings                                    14

1   your Honor issued from the bench and so ordered

2   subsequently on the last date your Honor directing

3   Dr. Truong to buy back --

4          THE COURT:  No, I didn't.  We don't know if

5   those units are still available.

6          I say all I want to do is restore the account

7   to the position it was in before the withdrawal was

8   made, the withdrawal which, in my view, clearly

9   violated my order.

10         To the extent that there -- that his son may

11  have disposed -- I don't know what his son has done

12  with this.  As I understand it, the money went from the

13  custodial account to another Schwab account, and then

14  went out of Schwab completely.

15         We don't know whether or not those units are

16  in some other account, whether or not they have been

17  sold, but they are units that are available and the way

18  that your client can comply with my order is just to

19  make sure that the account is restored to its proper

20  position, that's all.

21         MR. HERSHKOWITZ:  That wasn't the point I was

22  going to make.  Please --

23         THE COURT:  Yes.

24         MR. HERSHKOWITZ:  And I grant you its

25  hyper-technical, but for the record on my client's

Proceedings                                    15

1    behalf, your Honor in his order on Page Three of that

2    order directed, and I'm not debating the substance of

3    the direction, but the object of it, which was that he

4    pay into the custodial account of Tron Troc.  There is

5    no issue that any moneys were removed by my client from

6    the account of Tron Troc.

7            THE COURT:  Whatever, I don't remember what

8    account it is.  What happened here, as I recall, and

9    correct me, this is directed to the attorney for

10   Schwab.  My recollection is that the money was in the

11   custodial account initially, and that he arranged, he

12   participated in its removal from that account.  That's

13   what we're talking about.

14           MR. FOLEY:  The custodial account is in the

15   name of Hugh Mac Truong.  There is a slight error in

16   the record.

17           THE COURT:  Whatever.  What the units were

18   improperly removed from is the accounts, they should be

19   returned, and that account remains frozen as far as I'm

20   concerned.

21           Anything else?

22           MR. HERSHKOWITZ:  On the same order, on Page

23   Seven, and we read the order to say --

24           THE COURT:  I'm going to sign a written Order

25   in order to have him arrested and incarcerated.  It's

Proceedings                                    16

1    got to be something on paper.

2              And I'm directing the attorney for Schwab to

3    prepare the order.  And I think there's a warrant or

4    some sort of form that's necessary that they have to

5    give to the Sheriff to pick him up and arrange to have

6    him delivered, I think, to the Queens House of

7    Detension, I'm not sure.  In order to do that, you must

8    have put him on proper notice of your intent to do

9    that.  I read your Honor's last order to say,

10   "Counselor -- "this your Honor, "I'm going to give you

11   ten days to do that.  If he doesn't do it, I will give

12   you another date," as though to indicate today is not

13   the final date.

14             THE COURT:  The date will be the date on which

15   I sign the papers that the attorney for Schwab is going

16   to submit.  So you have -- I don't know how fast he's

17   going to move on that.  As soon as I get those papers,

18   they're going to be signed, counselor.

19             Anything else?  Anybody else want to put

20   something on the record.

21             MR. FOLEY:  Just one last little thing.  They

22   raise an issue of whether, with regard to a hearing --

23   on the date this motion was submitted, your Honor asked

24   Schwab and asked the plaintiff whether a hearing was

25   necessary, whether anyone had given any testimony.

Proceedings                                    17

1          I indicated that I believed that the

2     documents, the affidavits and the documents were

3     adequate for finding contempt.  Dr. Truong agreed.

4          MR. HERSHKOWITZ:  Well, I don't see that in

5     the record.  I don't dispute Mr. Foley's recollection.

6     Dr. Truong wants a hearing.

7          MR. FOLEY:  I think it was on November 5th.

8          THE COURT:  I don't think a hearing is

9     necessary.

10          MR. HERSHKOWITZ:  He's in the process of

11     trying to muster assets.  Can you give him a little

12     time to do that?

13          THE COURT:  How long will it take you to

14     prepare the necessary papers, counselor?

15          MR. HERSHKOWITZ:  He's too fast.

16          MR. FOLEY:  I'm not fast enough for your

17     client.

18          MR. HERSHKOWITZ:  Give us a little time.  Give

19     us a week.

20          THE COURT:  I'll tell him to settle an order.

21          MR. HERSHKOWITZ:  Give us 15 days.

22          THE COURT:  Tell me -- I'm talking to the

23     lawyer for Schwab --

24          MR. HERSHKOWITZ:  Judge, we're asking for an

25     extension.

Proceedings                                      18

1          THE COURT:  Just a second, counselor.

2          MR. FOLEY:  -- Friday.

3          THE COURT:  Okay.  You have until the end of

4    the week.  Now I have --

5          MR. HERSHKOWITZ:  Judge --

6          THE COURT:  Just a second.  I've got a motion

7    by the attorney for the intervener for default

8    judgement.  But it seems to me that that's certainly

9    stayed by virtue of the removal to the Southern

10   District.

11         MR. FOLEY:  I believe you ruled on that the

12   last time.

13         THE COURT:  We will adjourn that motion for 30

14   days just to see what happens.  That will take us to --

15   let's see what date that is -- all right May 29th .

16         MR. HERSHKOWITZ:  Could you get us into - -

17   May 29th?

18         THE COURT:  That's on the motion, that's not

19   --

20         MR. HERSHKOWITZ:  That's for submission.

21         THE COURT:  I'm adjourning the motion that I

22   think is stayed to May 29th, and you have an Order to

23   Show Cause here.

24         MR. HERSHKOWITZ:  Well, that was asking your

25   Honor to hold a hearing on the matters on which your

Proceedings                              19

1   Honor just heard.

2          THE COURT:  So that I'm marking the making of

3   the motion immediately returnable and denying it.

4   Okay.

5          MR. HERSHKOWITZ:  Just to convert assets to

6   the units which Schwab requires is going to take my

7   client more than three days.  It's not possible, your

8   Honor.

9          THE COURT:  He's had ten days, counselor.

10          MR. HERSHKOWITZ:  Judge, we would ask for

11  whatever time you could extend as possible.

12          THE COURT:  Just a minute.

13          MR. HERSHKOWITZ:  How about an interim date by

14  which he can show progress toward satisfying --

15          THE COURT:  No, no.  Hold on for a minute.

16          MR. HERSHKOWITZ:  -- just to transfer the

17  money and to buy the units.

18          THE COURT:  What?

19          MR. HERSHKOWITZ:  He's asking for time to

20  transfer the money and to buy the units.

21          THE COURT:  Counselor, I gave him ten days the

22  last time we were together.

23          MR. HERSHKOWITZ:  He's asking for time again.

24          THE COURT:  Make it next Monday.  All right.

25  Bring the papers in next Monday, a week.

Proceedings                          20

1           It will take probably seven or eight or nine

2    days for me to get those approved and signed.  Okay.

3    But I'm adjourning the motion.

4           The whole case is on for the 29th.  If it's

5    still in the Federal Court, we will mark it stayed.

6    it's system)

7

8                        * * * * * * * * *

9

10                      CERTIFICATION

11    Certified to be a true and accurate transcript.

12

13

14

15                     _____
                       Sara C. Stanley
16                     Senior Court Reporter

17

18

19

20

21

22

23

24

25