**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

Mac Truong et al.

           Plaintiffs

     Against

Charles Schwab & Co. et al.,

           Defendants

---

Docket No. 03-Cv-3425 (PKC)

# NOTICE OF CROSS-MOTION

TO DISMISS DEFENSE MOTION
FOR SUMMARY JUDGMENT
AND FOR LEAVE TO AMEND
COMPLAINT

---

Please take notice that upon filing the affirmation dated September 30, 2006 of Mac Truong and Maryse Mac-Truong, Plaintiffs *pro se* in this civil action, a motion shall be made at the United States District Court for the Southern District of New York, at the Courthouse located **at 500 Pearl Street, New York, NY 10007,** before the Honorable P. Kevin Castel, Judge, Courtroom #12C , **on October 9, 2006, at 10:00 AM**; or any place or date and time thereafter as directed by the Court, for an ORDER,

1. Denying defendants' motion for summary judgment pursuant to F.R.Cv.P. 12(c) or in the alternative pursuant to F.R.Cv.P. 56(b) to dismiss complaint; and

2. Denying defendants' motion for an order enjoining plaintiff from commencing actions or other proceedings against the defendants herein without prior court leave; and

3. Granting leave to plaintiffs to amend the complaint and its caption to update the allegations of fact and/or legal theories in the original complaint by adding facts that had not been alleged before as well as new causes of actions as called for by the new factual allegations in the proposed Amended Complaint, and

4. Granting leave to plaintiffs to amend the caption of the instant proceeding by removing Sills, Cummis, Zuckerman, Radin, Tischma, Epstein & Gross, PA, as a defendant herein, but adding Daniel J. Brooks, Esq., as a defendant in this civil action; and

5. Directing Defendants to answer amended complaint within 10 days following the granting of this motion, and the parties to proceed with discovery; and

6. Deeming that the service of the Amended Complaint, which is annexed to this Cross-Motion, is deemed valid and sufficient, and

7.    GRANTING OTHER AND FURTHER RELIEF as this Court may deem just and proper in the premises.

PLEASE TAKE FURTHER NOTICE, that no memorandum of law shall be served with these papers at this time because there is no novel issue of law, and plaintiff is *pro se*, and opposition papers, if any, must be served upon plaintiff and filed with the Court 7 days before the return date, and that this motion will be made by submission and, except otherwise directed by the Court, no appearance will be required on the hearing date.

Dated:          Teaneck, New Jersey
                September 30, 2006                    Yours,
                                                      Mac Truong, Plaintiff *Pro Se*
                                                      Maryse Mac-Truong, Plaintiff *Pro Se*
                                                      325 Broadway,
                                                      New York, N.Y. 10007
                                                      (212) 566-6000

To:

(1) SCHNADER HARRISON SEGAL & LEWIS, LLP
        Attorneys for Defendants
        140 Broadway, Suite 3100
        New York, NY 10005-1101
            Daniel J. Brooks, Lead Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Mac Truong    et al.                        Docket No. 03-Cv-3425 (PKC)
                    Plaintiffs
            against

Charles Schwab & Co. et al.,
                    Defendants

---

# PLAINTIFFS' AFFIRMATION
# IN OPPOSITION TO MOTION AND
# IN SUPPORT OF CROSS-MOTION

Mac Truong and Maryse Mac-Truong, plaintiffs *pro se* in this civil proceeding, affirm under the penalty of perjury as follows:

1. We are the plaintiffs *pro se* in the above-entitled action.  We have personal knowledge and are familiar with all the facts and circumstances in this proceeding.

2. We make this affirmation in opposition to defendants' motion for summary judgment and in support of our cross-motion for an order denying defendants' motion for summary judgment and granting us leave to amend complaint and directing the defendants to submit themselves to discovery before trial.

## PRELIMINARY STATEMENT

3. Plaintiff Mac Truong sues Charles Schwab & Co. in this action for its conversion of the assets in his IRA account deposited with Schwab since before 1995, containing about $350,000.00 worth of assets in January 2000 [EXHIBITS A-7-Sch. 4 & B] and about $450,000.00 in June 2000.

4. After the conversion took place about January and February 2003 [EXHIBIT 1] plaintiff contacted Schwab for at least an explanation. Schwab gave no explanation at all and directed plaintiffs to contact Daniel J. Brooks, Esq., and his law firm for an answer, if any, in this matter. Brooks provided no answer, except a conclusive and false statement that plaintiffs' accounts at Schwab (including his IRA account) belonged to other entities than plaintiffs pursuant to holding of a

whether or not she was the true and sole owner of Vishipco in January 2003, since at that time the assets still belonged to the Truongs' estate, and there had been no order by the USBC expressly allowing Schwab to do so. Therefore, this is a genuine issue of fact and Schwab has failed to submit any admissible and conclusive evidence that it had an order by the USBC authorizing it to release any funds to Vishipco and/or Dai-Nam.

196.    Viewing the foregoing, it is impossible for Schwab to pretend that it had only been an innocent stakeholder and/or that there is no genuine issues of fact, or that it had provided documentary evidence that "is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." [F.R.Cv.P. 201(b)]

197.    Since, it is undisputed that none of the papers submitted by movants meet the foregoing standard of review, their instant motion should be denied as a matter of law.

## MUCH EVIDENCE IS IN
## DEFENDANTS' POSSESSION

198.    It is undisputed that since Schwab converted about January 2003 all assets from plaintiffs' eight accounts held by it since 1995, much evidence showing Schwab's misconduct in this matter is within Schwab's possession and control. Hence plaintiffs are entitled to discovery of Schwab and/or its officers, employees and agents before trial. And as such summary judgment is premature at this time pursuant to F.R.Cv.P. Rules 26 and 30 among others.

## GROUND TO GRANT PLAINTIFF
## LEAVE TO AMEND COMPLAINT

199.    As clearly indicated in the proposed amended complaint annexed hereto as EXHIBIT 6, allegations of material facts therein that have occurred **after** the filing and service of the initial complaint in this action on or about November 6, 2002 undisputedly warrant that before this action may proceed to trial, a new updated complaint should be filed with this Court in order to avoid the risk of incomplete or piecemeal litigation of all plaintiffs' causes of action against all defendants herein.

200.    Since defendants Sills, Cummis, Zuckerman, Radin, Tischma, Epstein & Gross, PA, would be removed from the caption as defendants in this action, it would be reasonable to expect that

they would not object to plaintiffs' proposed amended complaint. The alternative would be that they would have to make a motion to achieve such purpose.

201.     Furthermore since Mr. Brooks has stated in the past that Schwab's attorneys, Layton Brooks & Hecht, had ceased to exist as a legal entity, while Daniel J. Brooks, Esq., a named partner thereof, is still handling this case, it would be reasonable in the interest of justice and judicial economy to add his name in the caption. Mr. Foley and he are without any doubt the main reason why Layton Brooks & Hecht was sued in this action.

202.     On the merits, in the initial complaint herein plaintiffs sue Schwab for having wrongfully restricted plaintiff's non-interpleaded assets after Justice Gammerman had dismissed on September 25, 2002 all state court proceedings [Exh. H to Def. Mot.], hence nullifying Justice Cozier's April 3, 2000 Restriction Order of plaintiff's seven accounts until further orders of the Court, and after the USBC had dismissed Schwab and Nguyen's motions to authorized Schwab to release "all" plaintiffs' assets at Schwab to Nguyen. Schwab had no reason to restrict plaintiffs' non-interpleaded assets or accounts at that point. **Such restriction was a construed conversion of funds not an actual one.**

203.     In the proposed Amended Complaint plaintiffs sue Schwab for its **actual conversion in January 2003 of plaintiffs' non-interpleaded assets** deposited at Schwab in their seven accounts at Schwab and any other accounts belonging to them, but wrongfully converted by Nguyen and/or her accomplices with the willful assistance of Schwab and/or its attorneys at law, Daniel J. Brooks, Esq., and/or Eamonn F. Foley, Esq. This conversion actually took place in January 2003, about two months after this action had been commenced in November 2002.

204.     All other points in the amended complaint that would be different from the initial complaint would speak for themselves. The main reasoning is, as some of them are facts that occurred after the initial complaint was served, it would be reasonable to amend the initial complaint to include these new causes of actions so that they could be tried at the same time.

205.     Last but not least, since the complaint herein was not even answered to by defendants except that an absolutely general denial was annexed as Exhibit C to defense instant motion to dismiss, there is no prejudice for defendants to be served with the proposed Amended Complaint [EXHIBIT 6] and proceed with discovery pursuant to F.R.Cv.P. 26 and 30.

### NO RES JUDICATA OR COLLATERAL ESTOPPEL
### EFFECTS EXIST, SINCE ISSUES RAISED IN
### THE INSTANT ACTION ARE DIFFERENT FROM
### THOSE ALREADY RAISED IN STATE COURT

206.    In sum Schwab wrongfully converted plaintiffs' assets deposited with it and now being sued therefor tries to convince this Court that the matter was already reviewed by a number of courts of competent jurisdiction and should not be revisited any more. This is the only excuse that Schwab has to defend its plain wrongdoing, but it should be dismissed by the Court for being mertiless and frivolous. In plain English, defendants have actually lost their case in courts, but, being stakeholder, they still took the monies and ran, and now pretend that the matter had already been resolved. This type of egregious criminal behavior should not be tolerated. On the contrary it should be severely punished by this Court in this proceeding.

207.    In their New York state court action entitled *Truong v. Schwab* #604650-97, plaintiff Mac Truong alone sued Schwab for having converted what was later referred to by Justice Cozier as the "interpleaded" funds. [Exh. G to Def. Mot.] Neither Schwab nor Elaine Nguyen countersued plaintiff for his personal or non-interpleaded assets at Schwab. They only baselessly and absurdly **pretended** that all plaintiff's assets at Schwab were "interpleaded" assets.

208.    In the initial complaint dated November 2002 of this action, plaintiff and his wife sue Schwab for its illegal restriction of their non-interpleaded assets in all their accounts at Schwab after September 25, 2002, date the state court action *Truong v. Schwab* #604650-97 was terminated by Justice Gammerman, amounting to **construed** conversion by Schwab of those funds as of September 25, 2002.

209.    As already mentioned in plaintiffs' foregoing statement of facts, on about January 2003 Schwab **actually** converted plaintiffs' non-interpleaded funds deposited at Schwab.

210.    Hence, as a matter of law not only plaintiffs should be allowed to amend their complaint to sue Schwab for their assets actually converted by Schwab as hereinabove indicated, but also is this evidence that there could be no res judicata or collateral estoppel effects to be given to any of the court orders mentioned by defendants in support of their instant motion for summary judgment. Indeed, since the issues in the prior proceedings are not the same as those raised in the instant action, plaintiffs have never been afforded any or full or fair opportunity to litigate the issues raised in the instant complaint and/or amended complaint.

# CONCLUSION

211.    Plaintiffs sue defendants herein for converting about $4,500,000.00 in assets deposited at Schwab in their 9 different accounts.

212.    Defendants move this Court for summary judgment dismissing complaint on the alleged affirmative defenses that they have undisputed documentary evidence in form of final valid court order(s) expressly directing and/or authorizing Schwab to liquidate all plaintiffs' nine accounts, except one, and transfer the funds thereof to third parties.

213.    A review of defendants' instant motion based upon such bold and ambitious claim does not disclose any such undisputed admissible documentary evidence supporting such affirmative defenses. In fact defense motion is merely built on frivolous speculations about inadmissible hearsays. **There is no affidavit of witness with personal knowledge in support of motion.**

214.    On the contrary as herein-above indicated on August 25, 2004 the issues of the ownership of Vishipco Lines companies and the exact amount of the "interpleaded" assets that plaintiffs herein owed to Vishipco were finally and undisputedly resolved by the United States Bankruptcy Court for the District of New Jersey. [EXHIBITS A and 5] This order clearly shows that defendants herein were wrong when they liquidated all assets in, and closed, all plaintiffs' seven accounts at Schwab and indiscriminately transferred plaintiffs' $4,500,000.00 at Schwab to Elaine Nguyen and/or her accomplices, allegedly pursuant to Justice Gammerman's September 25, 2002 Order, which in fact only lifted Justice Cozier's April 3, 2000 Order restricting Vishipco's "interpleaded" assets at Schwab. Since these state court orders were undisputedly non-final and issued prior to the USBC's August 25, 2004 Order, they were superseded by it as a matter of law, and produced no res judicata or collateral estoppel effects, while the latter order does.

215.    As such, if any order is final and carrying res judicata or collateral estoppel effects in the Vishipco matter, then it is the said August 25, 2004 Order of the USBC [EXHIBITS A and 5], but not at all Justice Cozier's April 3, 2000 or Justice Gammerman's September 25, 2002 or Judge Stein's March 19 or 20, 2003 Orders, if any.

216.    Therefore, unless plaintiffs are granted summary judgment in their favor, there are genuine issues of fact in this action, and as such defendants' motion for summary judgment should be denied.

WHEREFORE, Plaintiffs Mac Truong and Maryse Mac-Truong herein respectfully move the Court to deny defendants' motion to dismiss complaint and grant relief sought in the instant cross-motion and/or other and further relief as the Court may deem just and proper.

Dated : September 30, 2006

_____
Mac Truong, plaintiff pro se

_____
Maryse Mac-Truong, Plaintiff pro se

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Mac Truong et al.
             Plaintiffs
     against

Charles Schwab & Co. et al.,
             Defendants

Docket No. 03-Cv-3425 (PKC)
[Trial by Jury Requested]

---

# ADMENDED COMPLAINT

Mac Truong, Ph.D., J.S.D., plaintiff *pro se*, states as and for his complaint and that of his wife under penalty of perjury as follows:

## JURISDICTION AND VENUE

1. This is a civil action to recover damages for injury to plaintiffs because of the deprivation of their rights or privileges or immunities as citizens of the United States caused by defendants' act(s) done in furtherance of a conspiracy in violation of 42 USC 1985. As such this Court has original jurisdiction over this matter pursuant to 28 USC 1343(a)(1).

2. This is further a civil action to redress the deprivation, under the color of any State law, statute, ordinance, regulation, custom and usage, of plaintiff's right, privilege, immunity secured by the laws or Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, by defendants in violation of 42 USC 1983. As such this Court has original jurisdiction over this matter pursuant to 28 USC 1343(a)(3).

3. This is further a civil action to recover damages or to secure equitable relief under the Constitution of the United States or any Act of Congress providing for protection of civil rights. As such this Court has original jurisdiction over this matter pursuant to 28 USC 1343(a)(4).

4. This U.S. District Court has further original jurisdiction over this civil action pursuant to 28 U.S.C. 1332(a)(1) in that the parties are citizens of different States of the Union, and the matter in controversy exceeds the sum or value of $75,000.

5.  This U.S. District Court has also jurisdiction over this civil action pursuant to 28 U.S.C. 1331 in that several federal questions relating respectively to the violation of the terms of Plaintiff's licenses granted to him by the United States Department of Treasury under the Trading With Enemy Act, and also relating to the violation by defendants of the First and Fourth Amendments, and right to due process and to property, or rights protected by 42 USC 1983 and 1985.

6.  This U.S. District Court has also jurisdiction over this civil action pursuant to 28 U.S.C. 1331 in that several federal questions are raised relating respectively to the violation of 11 USC 362 or 18 USC 152, or 15 USC 1682 et seq., or 15 USC 45, or 15 USC 53(b); or 16 C.F.R. 444, or Federal Anti-Fraud Provisions, or 18 USC 1341 and 1345, Civil liability, 15 USC 1692k.

7.  This U.S. District Court has also jurisdiction over this civil action pursuant to 28 U.S.C. 1337 in that the services provided by the defendant Charles Schwab & Co. enter the interstate commerce.

8.  Venue is proper in this Court pursuant to 28 USC 1391(a)(2) and 28 U.S.C. 1391(b) and (c) since the acts complained of occurred in this judicial district and that the corporate defendant herein has the most significant contacts with the judicial district over which this U.S. Court has jurisdiction.

## THE PARTIES

9.  Mac Truong, Ph.D., J.S.D., plaintiff *pro se*, is a United States citizen, residing at 327 Demott Avenue, Teaneck, New Jersey 07666.

10. Maryse Mac Truong, plaintiff *pro se*, is a United States citizen, residing at 327 Demott Avenue, Teaneck, New Jersey 07666. She is the wife of plaintiff Mac Truong.

11. Upon information and belief defendant Charles Schwab & Co., Inc., is a legal entity duly licensed to do business in the state of New York. This defendant is represented by SCHNADER HARRISON SEGAL & LEWIS, LLP, located at 140 Broadway, Suite 3100, New York, NY 10005-1101, with Daniel J. Brooks, Esq. as its lead attorney.

12. Upon information and belief defendant Daniel J. Brooks, Esq., is an attorney at law, associated with a law firm entitled SCHNADER HARRISON SEGAL & LEWIS, LLP, located at 140 Broadway, Suite 3100, New York, NY 10005-1101.

13. Upon information and belief Defendant SCHNADER HARRISON SEGAL & LEWIS, LLP, is a legal entity having offices located at 140 Broadway, Suite 3100, New York, NY 10005-1101.

14. Upon information and belief defendant Eamonn F. Foley, Esq., is a partner of defendant Daniel J. Brooks, Esq., and of Layton Brooks & Hecht, a law firm with an office located at 400 Park Avenue, New York, NY 10022.

15. Upon information and belief defendant Layton Brooks & Hecht is a legal entity practicing law and having an office located at 400 Park Avenue, New York, NY 10022.

16. [Intentionally Omitted]

## FACTS AND CIRCUMSTANCES
## UNDERLYING THE INSTANT ACTION

17. In substance, defendants herein have used false documents, false business records, and false affidavits of fact to convert more than $4,500,000.00 (May 2000 Market Value) deposited at Schwab by Plaintiff in violation of 11 USC 362 and 18 U.S.C. 152, and the terms of several licenses issued to plaintiff by the United States Treasury Department.

18. Plaintiffs deposited in 8 then 7 accounts at Charles Schwab & Co. a total value of about $4,500,000 in assets in mutual funds and/or cash in year 2000.

19. Among the said accounts was Plaintiff's IRA account #8932-5539 at Schwab entitled "MAC TRUONG UTA CHARLES SCHWAB & CO., INC., IRA ROLLOVER DTD 09/18/95, 327 DEMOTT AVE, TEANECK, NJ 07666-3127.

20. In said account plaintiff had as of January 31, 2000 the TOTAL ACCOUNT VALUE of $346,164.49, including 166447.940 shares of Schwab Value Advantage Money Fund, and 631.80 shares of Schwab Money Market Fund, and 1939.196 shares of Fidelity Select Electronics Mutual Fund.

21. The value of said assets fluctuated according to the market condition. In May 2000 the market value of plaintiff's IRA was about $450,000.00.

22. The total value of the assets in Plaintiff's IRA account and six other accounts have never been withdrawn or liquidated by Plaintiff. Their total value of about $4,500,000.00 in about June 2000 is evinced by Schwab monthly statements.

3

23. On or about March 5 and 6, 2003 Schwab depleted and transferred out all Plaintiff's assets (or the balance thereof in the sum of $246,935.02) deposited in his said IRA Account #8932-5539.

24. The said depletion and/or illegal conversion of Plaintiff's IRA Account #8932-5539 was done by Schwab without any request or consent by Plaintiff. It was done without any prior or post explanation by Schwab. It was done without any prior or post notice to Plaintiff. All that Plaintiff received from Schwab was the March 2003 Monthly Statement showing that all the balance of his account was taken, transferred out and the account was closed. There was absolutely no other papers, even statements or forms for tax purposes, such as IRS Form 1099, showing that the account had gained taxable interests and/or dividends, and/or that the IRA assets have been liquidated by their owner, who must, as a consequence, pay appropriate income tax due to such early liquidation. There was absolutely no other papers explaining why Schwab took all Plaintiff's IRA assets in account #8932-5539 and closed it, without prior or subsequent notice.

25. Plaintiff thereafter contacted Charles Schwab & Co. for an explanation of such conversion of funds. Schwab refused to deal with Plaintiff or discussed with him on the phone or in writing in reference to this matter. One of Schwab's employees verbally referred Plaintiff to defendant Daniel J. Brooks, Esq. to discuss this matter.

26. Daniel J. Brooks, Esq., acting as Schwab's attorney at law, also refused to discuss or give any rational explanation of the depletion of Plaintiff's IRA account at Schwab.

27. About July 2004 based on *Truong v. Nguyen*, Adversary Proceeding #03-02494-NLW, in the U.S. Bankruptcy Court, District of New Jersey (USBC hereafter), Plaintiff served upon Schwab a subpoena duly issued by the Court directing Schwab to serve all bank statements and detailed transactions with names, and dates and amounts transferred, of transferors and transferees and their addresses and receipts; and all completed forms and requests and instructions and responses and court orders and/or any other documents in connection with plaintiff's IRA Accounts # 8932-5539 and six other accounts at Schwab.

28. It appeared that the said subpoena was referred by Schwab to Daniel J. Brooks, Esq., for compliance. On or about August 16, 2004, defendant Daniel J. Brooks, wrote to Plaintiff a letter as follows:

> *"I am in receipt of your subpoena dated July 29, 2004 and directed to Charles Schwab & Co., Inc. ("Schwab"). The subpoena is returnable today.*
> *Please be advised that, in addition to the questions about the adequacy of service of the subpoena and the amount of time given for Schwab's response to it, the*

4

*subpoena is objectionable because it seeks to impose upon Schwab an obligation to produce confidential documents pertaining to accounts which a number of courts have held belong to persons or entities other than you and your wife. Therefore, because you and your wife have no interest in those accounts or in any transfers or assets into or out of those accounts, Schwab will not, absent a court order, produce the requested documents. "*

29. The foregoing letter written by Mr. Brooks to plaintiff shows that he and his law firms [Brooks et al] are attorneys for Schwab in this matter dealing with the assets deposited by plaintiff in his IRA account and other accounts at Schwab; and that Brooks et al. are the authorities that had instructed Schwab to deplete all plaintiff's assets at Schwab and transfer them out to persons or entities, whose identities they had never formally revealed to plaintiff or his wife.

30. In said letter, defendant Brooks stated that plaintiff had no interest in his own IRA Account #8932-5539 at Schwab. Such statement is false and even absurd. It is a blatant deprivation of plaintiff's right to information as a client of Charles Schwab & Co. pursuant to the July 29, 2004 Subpoena Order issued by the USBC, under color of state court orders, since he alleged that there were state court orders to that effect, while in fact there were none.

31. Plaintiff has not attempted to make any contact with Schwab and/or Brooks et al. in this matter of the conversion of his IRA assets or any other assets ever since.

32. It is important to note that even though Brooks et al. stated that a number of courts have held that Plaintiff and his wife's Schwab accounts belonged to persons or entities other than plaintiff and his wife, neither Schwab nor Brooks et al. nor any third parties have ever served Plaintiff and/or his wife with any such orders, finding or determining that assets in plaintiff's IRA account, for instance, belonged to persons or entities other than plaintiff Mac Truong himself.

33. Also, there has never been any order by any court of competent jurisdiction authorizing Schwab to transfer out, without giving any notice to plaintiff, all the assets in his IRA Account #8932-5539, and/or his assets in his other 6 accounts at Schwab, and completely deplete and close those accounts, without any notice or explanation to the account owners or authorized agent plaintiff Mac Truong.

34. Said statement by defendant Brooks is false and known to him to be false when he made it. Indeed, on or about October 16, 1997 Defendant Eamonn F. Foley, Esq., defendant Brooks' partner, made an affirmation stating clearly under oath about the origin of Mac Truong's IRA account at Schwab that: *"Unlike the four other Mac Truong accounts, to*

*date Schwab has been unable to directly trace the flow of any of the disputed assets into this account.*" It is also undisputed that ever since Schwab has never been able to directly trace the flow of any of the assets, to which any party might have made a claim, into plaintiff's IRA account #8932-5539 at Schwab.

35. It is also undisputed that even any successful tracing of any alleged disputed assets by Mr. Foley relating to Mac Truong's "four other accounts" did not mean that the assets in Mac Truong's other accounts than his IRA account were not his but somebody else's.

36. In any event there has never been any court order finding that the assets in Mac Truong's IRA account and/or other accounts do not belong to Mac Truong or his family and must be secretly transferred, without any records, to other entities without any notice or explanation to him.

## OTHER PLAINTIFF'S PERSONAL ACCOUNTS AT SCHWAB

37. In addition to plaintiff Mac Truong's IRA account #8932-5539 at Schwab, plaintiff had opened and maintained since 1995 the following personal accounts at Schwab:

    (1) Account No. 8932-5532 - MAC TRUONG (containing assets worth about $550,000 in May 2000)

    (2) Account No. 8932-5542 - MAC TRUONG joint with MARYSE TRUONG (containing assets worth about $420,000 in May 2000)

    (3) Account No. 5816-3382 – Mac Truong Custodial Account for HUGH MAC-TRUONG (containing assets worth about $400,000 in May 2000).

    (4) Account No. 5816-3378 – Mac Truong Custodial Account for THULINH MAC-TRUONG (containing assets worth about $250,000 in May 2000)

38. The foregoing accounts contained assets belonging to the respective account owner as herein-above set forth. No party ever had made any claim to the title of the said assets ever. There has never been any court order determining that the assets in the foregoing accounts do not belong to their respective owners but to somebody else or any other entities than the account owners. There has never been any court order directing that Schwab is authorized to secretly transfer all the assets therein to other accounts under somebody else's names and close them without notifying neither plaintiff herein nor the owners of those accounts.

39. Notwithstanding the above, in January and February 2003 without any notice to plaintiff or the owners of said accounts, Schwab converted all the assets in the said accounts and

closed them. The only explanation plaintiff received from Schwab was defendant Brooks'
letter dated August 16, 2004.

## PLAINTIFF'S CORPORATE ACCOUNTS AT SCHWAB

40. In addition to plaintiff Mac Truong's IRA account #8932-5539 at Schwab and his other
personal accounts, plaintiff had opened and maintained since 1995 the following accounts
at Schwab:

> (1) Corporate Account No. 9090-7712 entitled Vishipco Lines (formerly
> #9090-7706 and #9090-7708) containing invested assets worth about
> $1,400,000 in May 2000);
>
> (2) Corporate Account No. 2664-3974 entitled Dai Nam Hang Hai (formerly
> #2664-3955) containing invested assets worth about $660,000 in May 2000).

41. The foregoing corporate accounts contained assets belonging to plaintiff Mac Truong and
the respective account owners as herein-above set forth. Specifically the assets in those
corporate accounts were earned and recovered through lawsuits between 1975-1986 by
plaintiff Mac Truong alone. To these corporate accounts the government of Vietnam,
owner of Vitranschart, Inc., successor-in-interest since April 30, 1975 to ten Vishipco
Lines companies, which were ten Vietnamese oceangoing shipping companies, including
Dai-Nam Hang Hai, of the former Republic of South Vietnam, had a claim for
$210,000.00 pursuant to the terms of several licenses of the United States Treasury
Department issued to plaintiff. About July 2004 the government of Vietnam did file a
proof of claim for about $210,000.00 against the Chapter 7 bankruptcy estate of plaintiff
Mac Truong and his wife, Maryse Mac-Truong. That claim was approved by the U.S.
Bankruptcy Court on or about August 24, 2004 and constitutes conclusive evidence that
the government of Vietnam, and nobody else, is the owner of 10 Vishipco Lines
companies, including Dai-Nam Hang Hai Cong Ty.

42. No party, except Elaine Nguyen and her accomplices, one of whom was a former
shareholder of some of the ten Vishipco Lines companies before April 30, 1975, submitted
forged documents to Schwab to pretend that they were the current owners of Vishipco and
hence had a claim to the assets held by plaintiff Mac Truong in said plaintiff's corporate

accounts. These parties never made any claim to any assets in Mac Truong's personal accounts. They moved the New York Supreme Court to declare them the owners of Vishipco. The Court did not grant hence denied their motion.

43. There has never been any court order determining that the assets in the foregoing corporate accounts do not belong to their respective owners, i.e. 10 Vishipco Lines companies, including Dai Nam, hence to the government of Vietnam, the owner thereof. There has never been any court order declaring that Elaine Nguyen and/or her accomplices are owners of ten Vishipco Lines companies and/or Dai –Nam, or that the assets earned by plaintiff Mac Truong and deposited by him in corporate accounts at Schwab under the names of Vishipco Lines companies in compliance with licenses issued to him by the U.S. Treasury Department, belong to other entities than to said companies, owned by the government of Vietnam.

44. There has never been any court order directing that Schwab is authorized to secretly transfer all the assets therein to other accounts under somebody else's names and close them without notifying neither plaintiff herein nor the government of Vietnam, owners of those accounts.

45. Notwithstanding the above, in January and February 2003 without any notice to plaintiff or the owners of said accounts, Schwab converted all the assets in the said corporate accounts and closed them. The only explanation plaintiff received from Schwab was defendant Brooks' letter dated August 16, 2004.

46. Upon information and belief, defendants converted plaintiff's assets by falsifying bank records and using forged documents, creating false identities for persons(s) to whom they pretended the assets belonged.

47. The foregoing is undisputedly defendants' most serious misconduct for which they should be held fully accountable pursuant to 18 USC 401, 152 & 1623, 11 USC 362 and numerous other appropriate provisions of the law.

48. On or about July 12, 2000 plaintiffs Mac Truong and Maryse Mac-Truong filed for Chapter 13 bankruptcy that was converted by court order to a Chapter 11 proceeding, which was terminated and closed on or about March 21, 2003. As a result, between July 12, 2000 and March 21, 2003 all the assets in plaintiff's accounts were restricted from any transfer in or out without express leave of the United States Bankruptcy Court pursuant to 11 USC 362.

49. Defendants herein were fully aware of said restriction pursuant to 11 USC 362.

8

50. Notwithstanding the above, under color of state court orders and/or forged documents and/or bank records, defendants transferred all the assets in all accounts to which plaintiff had a claim to other accounts without plaintiff's consent or authorization or any notice in violation of 11 USC 362. Indeed, plaintiff has never been served with any order of the USBC authorizing defendants to transfer out and deplete all assets in his 8 then 7 accounts at Schwab.

51. As a conclusion, defendants have acted concert with one another or third parties and deprived plaintiffs' constitutional and/or legal rights to due process, equal protection and to enjoy their properties deposited at Schwab by common law fraud and/or under color of state law or court orders in violation of the terms of plaintiff Mac Truong's licenses issued to him by the United States Treasury Department under the TWEA (Trading With the Enemy Act) and automatic stay pursuant to 11 USC 362.

## AS A FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS BASED ON COMMON LAW CRIME OF CONVERSION

52. Plaintiff repeats all the allegations already made above with the same force and effect as if fully set forth at length herein.

53. The facts indicate that defendants have unlawfully converted the funds of plaintiff in his IRA account #8932-5539 at Schwab

54. As a consequence thereof plaintiff Mac Truong has been damaged in the sum of Four Hundred Fifty Thousand Dollars ($450,000.00) plus interest at 9% commencing September 1, 1997 and is entitled to relief in form of a judgment finding that plaintiff has been injured by defendants, and granting plaintiff a money judgment in the sum of $450,000.00 dollars, plus 9% interest commencing September 1, 1997, plus expenses, costs and triple punitive damages.

## AS A FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS BASED ON COMMON LAW CRIME OF CONVERSION

55. Plaintiff repeats all the allegations already made above with the same force and effect as if fully set forth at length herein.

56. The facts indicate that defendants have unlawfully converted the funds of plaintiff in his Schwab Account #8932-5532 under the name of MAC TRUONG (containing assets worth about $550,000 in May 2000)

57. As a consequence thereof plaintiff Mac Truong has been damaged in the sum of Five Hundred Fifty Thousand Dollars ($550,000.00) plus interest at 9% commencing September 1, 1997 and is entitled to relief in form of a judgment of this Court finding that plaintiff has been injured by defendants, and granting plaintiff a money judgment in the sum of $550,000.00 dollars, plus 9% interest commencing September 1, 1997, plus expenses, costs and triple punitive damages.

## AS A FOR A THIRD CAUSE OF
## ACTION AGAINST DEFENDANTS BASED
## ON COMMON LAW CRIME OF CONVERSION

58. Plaintiff repeats all the allegations already made above with the same force and effect as if fully set forth at length herein.

59. The facts indicate that defendants have unlawfully converted the funds of plaintiff in his Schwab Account #8932-5542 under the name of MAC TRUONG JOINT WITH MARYSE MAC-TRUONG (containing assets worth about $420,000 in May 2000)

60. As a consequence thereof plaintiff and his wife have been damaged in the sum of Four Hundred Twenty Thousand Dollars ($420,000.00) plus interest at 9% commencing September 1, 1997 and is entitled to relief in form of a judgment of this Court finding that plaintiff has been injured by defendants, and granting plaintiff a money judgment in the sum of $420,000.00 dollars, plus 9% interest commencing September 1, 1997, plus expenses, costs and triple punitive damages.

## AS A FOR A FOURTH CAUSE OF
## ACTION AGAINST DEFENDANTS BASED
## ON COMMON LAW CRIME OF CONVERSION

61. Plaintiff repeats all the allegations already made above with the same force and effect as if fully set forth at length herein.

62. The facts indicate that defendants have unlawfully converted the funds of plaintiff in his Schwab Account #5816-3382 under the name of MAC TRUONG CUSTODIAL

ACCOUNT FOR HUGH MAC-TRUONG (containing assets worth about $400,000 in May 2000)

63. As a consequence thereof plaintiff Mac Truong and his son Hugh Mac-Truong have been damaged in the sum of Four Hundred Thousand Dollars ($400,000.00) plus interest at 9% commencing September 1, 1997 and is entitled to relief in form of a judgment of this Court finding that plaintiff has been injured by defendants, and granting plaintiff a money judgment in the sum of $400,000.00 dollars, plus 9% interest commencing September 1, 1997, plus expenses, costs and triple punitive damages.

## AS A FOR A FIFTH CAUSE OF
## ACTION AGAINST DEFENDANTS BASED
## ON COMMON LAW CRIME OF CONVERSION

64. Plaintiff repeats all the allegations already made above with the same force and effect as if fully set forth at length herein.

65. The facts indicate that defendants have unlawfully converted the funds of plaintiff in his Schwab Account #5816-3378 under the name of MAC TRUONG CUSTODIAL ACCOUNT FOR THULINH MAC-TRUONG (containing assets worth about $250,000 in May 2000)

66. As a consequence thereof plaintiff and his daughter Thulinh Mac-Truong have been damaged in the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) plus interest at 9% commencing September 1, 1997 and is entitled to relief in form of a judgment of this Court finding that plaintiff has been injured by defendants, and granting plaintiff a money judgment in the sum of $250,000.00 dollars, plus 9% interest commencing September 1, 1997, plus expenses, costs and triple punitive damages.

## AS A FOR A SIXTH CAUSE OF
## ACTION AGAINST DEFENDANTS BASED
## ON COMMON LAW CRIME OF CONVERSION

67. Plaintiff repeats all the allegations already made above with the same force and effect as if fully set forth at length herein.

11

68. The facts indicate that defendants have unlawfully converted the funds of plaintiff in his Schwab corporate Account No. 9090-7712 entitled Vishipco Lines (formerly #9090-7706 and #9090-7708) containing invested assets worth about $1,400,000 in May 2000.

69. As a consequence thereof plaintiff Mac Truong has been damaged in the sum of One Million Four Hundred Thousand Dollars ($1,400,000.00) plus interest at 9% commencing September 1, 1997 and is entitled to relief in form of a judgment of this Court finding that plaintiff has been injured by defendants, and granting plaintiff a money judgment in the sum of $1,400,000.00 dollars, plus 9% interest commencing September 1, 1997, plus expenses, costs and triple punitive damages.

## AS A FOR A SEVENTH CAUSE OF
## ACTION AGAINST DEFENDANTS BASED
## ON COMMON LAW CRIME OF CONVERSION

70. Plaintiff repeats all the allegations already made above with the same force and effect as if fully set forth at length herein.

71. The facts indicate that defendants have unlawfully converted the funds of plaintiff in his Schwab corporate Account No. 2664-3974 – Dai Nam Hang Hai (formerly #2664-3955) and containing invested assets worth about $660,000 in May 2000.

72. As a consequence thereof plaintiff Mac Truong has been damaged in the sum of Six Hundred Sixty Thousand Dollars ($660,000.00) plus interest at 9% commencing September 1, 1997 and is entitled to relief in form of a money judgment of this Court finding that plaintiff has been injured by defendants, and granting plaintiff a money judgment in the sum of $1,400,000.00 dollars, plus 9% interest commencing September 1, 1997, plus expenses, costs and triple punitive damages.

## AS AND FOR AN EIGHTH CAUSE OF
## ACTION AGAINST DEFENDANTS IN
## VIOLATION OF 42 U.S.C. 1983

73. Plaintiff repeats all the allegations already made above with the same force and effect as if more fully set forth at length herein.

74. The facts indicate that Defendants have acted fraudulently under color of New York state law or court orders or forged documents and/or false records to deprive plaintiff of his civil

12

rights, privileges or immunities to due process and/or equal protection under the laws, and/or terms of his licenses issued to him by the U.S. Treasury Department, and/or 11 USC 362 in violation of 42 USC 1983.

75. As a consequence of Defendants' foregoing violation of 42 U.S.C. Section 1983 plaintiff has been damaged in the sum of One Hundred Millions Dollars ($100,000,000.00) and is entitled to relief in form of a judgment by this Court finding that plaintiff has been injured by Defendants and granting plaintiff a money judgment in the sum of $100,000,000.00 dollars, plus attorney fees, court costs and expenses.

## AS AND FOR A NINTH CAUSE OF ACTION AGAINST DEFENDANTS FOR THE CRIME OF CONSPIRACY IN VIOLATION OF 42 USC 1985

76. Plaintiff repeats all the allegations already made above with the same force and effect as if more fully set forth at length herein.

77. The facts indicate that defendants have acted in concert fraudulently and/or under color of state law or court orders or forged documents and/or false records to deprive plaintiff's rights to property or equal privileges and immunities to due process or equal protection, and/or pursuant of the terms of his licenses issued to him by the U.S. Treasury Department, or his rights protected by 11 USC 362, in violation of 42 USC 1983 and 42 USC 1985.

78. As a consequence of Defendants' act of conspiracy plaintiff has been damaged in the sum of One Hundred Million Dollars ($100,000,000.00) and is entitled to relief in form of a judgment of this Court finding that plaintiff has been injured by Defendant and granting plaintiff a money judgment in the sum of $100,000,000.00 dollars, plus attorney fees, court costs and expenses.

**WHEREFORE  Plaintiff respectfully moves the Court for a Judgment:**

1. Granting damages in the sum of $450,000.00 dollars, plus 9% interest commencing September 1, 1997, plus expenses, costs and triple punitive damages as and for plaintiff Mac Truong's First Cause of Action; and

2. Granting damages in the sum of $550,000.00 dollars, plus 9% interest commencing September 1, 1997, plus expenses, costs and triple punitive damages as and for plaintiff Mac Truong's Second Cause of Action; and

3. Granting damages in the sum of $420,000.00 dollars, plus 9% interest commencing September 1, 1997, plus expenses, costs and triple punitive damages as and for plaintiff Mac Truong's and plaintiff Maryse Mac-Truong's Third Cause of Action; and

4. Granting damages in the sum of $400,000.00 dollars, plus 9% interest commencing September 1, 1997, plus expenses, costs and triple punitive damages as and for plaintiff Mac Truong's and Hugh Mac-Truong's Fourth Cause of Action; and

5. Granting damages in the sum of $250,000.00 dollars, plus 9% interest commencing September 1, 1997, plus expenses, costs and triple punitive damages as and for plaintiff Mac Truong's and Thulinh Mac-Truong Fifth Cause of Action; and

6. Granting damages in the sum of $1,400,000.00 dollars, plus 9% interest commencing September 1, 1997, plus expenses, costs and triple punitive damages as and for plaintiff Mac Truong's Sixth Cause of Action; and

7. Granting damages in the sum of $660,000.00 dollars, plus 9% interest commencing September 1, 1997, plus expenses, costs and triple punitive damages as and for plaintiff Mac Truong's Seventh Cause of Action; and

8. Granting damages in the sum of $100,000,000.00 dollars, plus attorney fees, court costs and expenses as and for plaintiff Mac Truong's Eighth Cause of Action; and

9. Granting damages in the sum of $100,000,000.00 dollars, plus 9% interest commencing September 1, 1997, plus attorney fees, court costs and expenses as and for plaintiff Mac Truong's Ninth Cause of Action; and

10. Granting plaintiffs reasonable attorneys' fees and court costs for having prosecuted this action; and

11. Granting such other and further relief as may be just, proper and equitable in the premises.

Teaneck, New Jersey - June 14, 2006

Mac Truong, Ph.D., J.S.D., Plaintiff *pro se*

Maryse Mac-Truong, Plaintiff *pro se*

14