UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
DR. MAC TRUONG,                           :

               Plaintiff,              :      07 Civ. 8085 (SHS)

    -against-                              :

CHARLES SCHWAB & CO., INC.,                :

             Defendant.            :
------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANT'S MOTION TO DISMISS THE COMPLAINT</u>


Daniel J. Brooks (DB-3136)
SCHNADER HARRISON SEGAL & LEWIS LLP
140 Broadway, Suite 3100
New York, New York 10005
(212) 973-8000
fax: (212) 972-8798
e-mail: dbrooks@schnader.com

Attorneys for Defendant

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

    The New York Action .................................................................................................. 2

    The Six Southern District Actions ............................................................................ 10

    The New Jersey Action .............................................................................................. 12

    The Denial of Mac Truong's Motion to Amend His Complaint in the
    New Jersey Action ..................................................................................................... 14

    The Motion to Reopen the New York Action or for Clarification of the
    September 26, 2002 Order ......................................................................................... 15

ARGUMENT .......................................................................................................................... 16

I.  The Complaint Should be Dismissed Based upon the Doctrines of Collateral
    Estoppel and *Res Judicata* ......................................................................................... 16

    A.   The Applicable Legal Standard ...................................................................... 16

    B.   The Doctrine of Collateral Estoppel Requires the Dismissal of the Complaint ............... 17

    C.   The Doctrine of *Res Judicata* Requires the Dismissal of the Complaint ......................... 23

II.    The Conversion Claims are Time-Barred and Must be Dismissed ................................... 24

III.   The Claim under 42 U.S.C. § 1983 Must be Dismissed on Statute of
    Limitations Grounds and Because it Fails to State a Valid Claim for Relief .................. 24

CONCLUSION ....................................................................................................................... 25

PHDATA 3032503_1

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Ambase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63 (2d Cir. 2003).........17

*American Med. Ass'n v. United Healthcare Corp.*, 00 Civ. 2800 (LMM),
    2006 U.S. Dist. LEXIS 93864 (S.D.N.Y. Dec. 29, 2006)............................23

*Blankman v. The County of Nassau*, 819 F. Supp. 198 (E.D.N.Y. 1993)........................24

*Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994)................................................17

*Cobb v. Pozzi*, 363 F.3d 89 (2d Cir. 2004) ........................................................17

*Conopco, Inc. v. Roll Int'l*, 231 F.3d 82 (2d Cir. 2000) ....................................17

*Curry v. City of Syracuse*, 316 F.3d 324 (2d Cir. 2003) ....................................18

*Hoblock v. Albany County Bd. of Elecs*, 422 F.3d 77 (2d Cir. 2005) ..............................17

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ........................................................17

*Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261 (2d Cir. 1997).........................21, 22

*Maharaj v. Bankamerica Corp.*, 128 F.3d 94 (2d Cir. 1997) ............................................23

*Marvel Characters v. Simon*, 310 F.3d 280 (2d Cir. 2002) .........................................23, 24

*Meadowbrook-Richman, Inc. v. Associated Financial Corp.*,
    325 F. Supp. 2d 341 (S.D.N.Y. 2004).......................................................24

*Plumey v. New York State*, 389 F. Supp. 2d 491 (S.D.N.Y. 2005) ....................................24

*Poucher v. Intercounty Appliance Corp.*, 336 F. Supp. 2d 251 (E.D.N.Y. 2004) .............25

*Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165 (S.D.N.Y. 2006)....................................25

*Rodgers v. Roulette Records, Inc.*, 677 F. Supp. 731 (S.D.N.Y. 1988) ..........................24

*Salahuddin v. Jones*, 992 F.2d 447 (2d Cir. 1993) ............................................17

*Semtek Int'l v. Lockheed Martin Corp.*, 531 U.S. 497 (2001) ...........................................22

*Thaler v. Casella*, 960 F. Supp. 691 (S.D.N.Y. 1997) .........................................21

PHDATA 3032503_1

*Truong v. Tran*, Nos. 03 Civ. 3423, 3424 and 3425 (PKC), 2007 U.S.Dist. LEXIS 10973 (S.D.N.Y. Feb. 5, 2007) ............................................................ *passim*

*Vishipco Line v. Charles Schwab & Co.*, Nos. 02 Civ. 7823, etc. (SHS), 2003 U.S. Dist. LEXIS 4082 (S.D.N.Y. Mar. 19, 2003) ............................................. *passim*

*Weinstein v. Albright*, 261 F.3d 127 (2d Cir. 2001) ............................................. 16

## STATE CASES

*Matter of Mac Truong*, 22 A.D.3d 62, 800 N.Y.S.2d 12 (1st Dep't 2005) .......................... 7

*Slater v. American Mineral Spirits Co.*, 33 N.Y.2d 443, 354 N.Y.S.2d 620 (1974) ......... 22

*Truong v. Charles Schwab & Co., Inc.*, 289 A.D.2d 98, 735 N.Y.S.2d 15 (1st Dep't 2001) .................................................. 6, 19

*Vavolizza v. Krieger*, 33 N.Y.2d 351, 352 N.Y.S.2d 919 (1974) ...................................... 21

*Vigilant Ins. Co. of Am. v Housing Auth. of City of El Paso, Tex.*, 87 N.Y.2d 36, 637 N.Y.S.2d 342 (1995) ............................................................................ 24

## FEDERAL STATUTES

42 U.S.C. § 1983 .................................................................................... 1, 15, 24, 25

42 U.S.C. § 1985 ............................................................................................... 15

28 U.S.C. § 1404(a) .......................................................................................... 12

28 U.S.C. § 1927 ............................................................................................... 11

Rule 12(b)(6), Fed. R. Civ. P., ....................................................................... *passim*

Rule 12(c), Fed. R. Civ. P. ................................................................................ 12

Rule 60(b)(2), Fed. R. Civ. P. .......................................................................... 16

Rule 201(b), Fed. R. Evid. ................................................................................ 17

## STATE STATUTES

N.Y. C.P.L.R. § 214[3] ...................................................................................... 24

PHDATA 3032503_1

## PRELIMINARY STATEMENT

Defendant Charles Schwab & Co., Inc. ("Schwab") respectfully submits this memorandum of law in support of its motion to dismiss the complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. Dismissal is warranted because it is clear from the face of the complaint, and matters of which the Court may take judicial notice, that plaintiff's claims are barred as a matter of law. The facts subject to judicial notice in the determination of this motion are contained in prior judicial opinions and in the exhibits to the accompanying declaration of Daniel J. Brooks, dated December 17, 2007 ("Brooks Dec.").

The complaint, which asserts that Schwab converted assets totaling $4.5 million from seven accounts all supposedly belonging to the plaintiff, should be dismissed, without leave to replead, because the claims are barred by the doctrines of collateral estoppel and *res judicata*. All of these purported claims and issues have been repeatedly and exhaustively litigated over the course of a decade, and consistently decided adversely to the plaintiff, in the New York State Supreme Court (*Mac Truong v. Charles Schwab*, No. 604650/97 (N.Y. Sup. Ct.)) (the "New York Action") and in this Court; *see, e.g., Vishipco Line v. Charles Schwab & Co.*, Nos. 02 Civ. 7823, etc. (SHS), 2003 U.S. Dist. LEXIS 4082 (S.D.N.Y. Mar. 19, 2003) ("*Vishipco*"); *Truong v. Tran*, Nos. 03 Civ. 3423, 3424 and 3425 (PKC), 2007 U.S. Dist. LEXIS 10973 (S.D.N.Y. Feb. 5, 2007) ("*Tran*").

In addition, the seven conversion claims asserted in the complaint are time-barred under the applicable three-year statute of limitations. The eighth and final claim, under 42 U.S.C. § 1983, is not only time-barred, but is also substantively defective because Schwab is a private party, not a "state actor," as required by that statute.

## STATEMENT OF FACTS

### The New York Action

As recited in numerous opinions authored by judges of the New York State Supreme Court ("New York Court") and this Court, including *Vishipco* and *Tran*, the claims asserted in this complaint have their genesis in Mac Truong's recovery of certain funds in the 1970's on behalf of various Vietnamese shipping companies (collectively, "Vishipco"), pursuant to a power of attorney given him by a Vishipco official, Tran Dinh Truong ("Tran"). The funds were deposited in several corporate accounts at Merrill Lynch, where they remained until 1995, when they were transferred to various accounts at Schwab. In 1997, a dispute erupted between Mac Truong and Tran, resulting in Tran's revocation of Mac Truong's power of attorney and the freezing of the accounts by Schwab. The New York Action was commenced in September 1997 by Mac Truong against Schwab. In response, Schwab interpleaded as third-party interpleaded defendants Tran and two of the shipping companies, Vishipco and "Dai Nam" (the third-party interpleaded defendants are collectively referred to as "Truong's Adversaries"). On June 18, 1998, all of the claims asserted against Schwab by Mac Truong and by Truong's Adversaries were dismissed on summary judgment, and Schwab was discharged as stakeholder of the interpleaded accounts. *See Tran*, 2007 U.S. Dist. LEXIS 10973, at *5-9; *Vishipco*, 2003 U.S. Dist. LEXIS 4082, at *4-6.

Although discharged as stakeholder, Schwab agreed to retain custody of the seven disputed accounts pending the New York Court's resolution of the competing claims of Mac Truong and Truong's Adversaries to ownership of those accounts. *See Tran*, 2007 U.S. Dist. LEXIS 10973, at *9. This agreement was embodied in a stipulation between Schwab, Mac

PHDATA 3032503_1

Truong, and Truong's Adversaries, which was "so ordered" by then Justice Barry A. Cozier on June 14, 1999 (the "Stipulation and Order"). *Id.*

The seven restrained accounts listed in the Stipulation and Order are the same seven accounts which, according to Mac Truong's complaint, Schwab converted when it turned them over to Truong's Adversaries in March 2003. *Compare* Brooks Dec. Ex. A (the complaint), ¶ 3 (listing the following accounts as being active as of August 1997: 8932-5539 (Mac Truong IRA account); 8932-5532 (Mac Truong account); 8932-5542 (Mac Truong and Maryse Mac-Truong joint account); 5816-3382 (Mac Truong's custodial account for his son, Hugh Mac-Truong); 5816-3378 (Mac Truong's custodial account for his daughter, Thulinh Mac-Truong); 9090-7712 (Vishipco account); and 2264-3974 (Dai Nam account)) *with* Brooks Dec. Ex. B (the Stipulation and Order), ¶ 2 (listing the following restrained accounts: 9090-7712 (Vishipco); 2664[sic]-3974 (Dai Nam); 8932-5532 (Mac Truong); 8932-5539 (Mac Truong IRA); 8932-5542 (Mac Truong and Maryse Mac Truong joint account); 5816-3378 (custodial account for Thulinh Mac Truong); and 5816-3382 (custodial account for Hugh Mac Truong)).

On April 3, 2000, the New York Court (Barry A. Cozier, J.) issued a decision and order (Brooks Dec. Ex. C) granting the motion by Truong's Adversaries for summary judgment against Mac Truong. As the New York Court characterized that motion, Truong's Adversaries sought, *inter alia*, "an order declaring [them] to be the lawful owner of the interpleaded assets." Brooks Dec. Ex. C, at 1. The court identified the interpleaded (or disputed) assets as being those contained in the seven "Restrained Accounts" maintained at Schwab pursuant to the Stipulation and Order. *Id.* at 8.

PHDATA 3032503_1

In granting summary judgment in favor of Truong's Adversaries, the New York Court found (as Truong's Adversaries had asserted, *id.* at 11) that Mac Truong's transfer of Vishipco funds to his personal accounts without consent of his principal constituted a breach of his fiduciary duty and that Mac Truong had "acted in bad faith in gross derogation of his fiduciary duties." *Id.* at 21. Accordingly, the court found that Mac Truong had "forfeited his right to compensation, in the form of commissions or otherwise, effective upon his unlawful transfer of corporate funds into his personal accounts in or about August 1995." *Id.* at 22. The court declared that Vishipco and Dai Nam were "*the lawful owners of the interpleaded assets.*" *Id.* at 23 (emphasis supplied). Significantly, the court adopted the contention of Truong's Adversaries (*id.* at 10), that: "*All of the interpleaded funds on deposit in the various Schwab accounts are traceable to the original recovery proceeds, together with interest, dividends and other accretions.*" *Id.* at 20-21 (emphasis supplied).

Although the New York Court declared that Truong's Adversaries were the lawful owners of the interpleaded assets, it did not immediately direct that those assets be released to them. Instead, the release of the interpleaded assets to Truong's Adversaries was held in abeyance pending a long accounting, which was referred for assignment to a Special Referee to hear and determine, "including the tracing of funds and computation of principal and interest to be allocated between the two (2) corporate third-party defendants, as well as any surcharges and interest to be charged against plaintiff." *Id.* at 24-26. The long accounting had been requested by Truong's Adversaries (*id.* at 22-23), who believed that Mac Truong might have removed funds from the interpleaded accounts between 1995 (when the funds were transferred to Schwab) and September 1997 (when the accounts were frozen). As explained by their attorney, in an objection to the long accounting ultimately served by Mac Truong (Brooks

Dec. Ex. D; ¶¶ 6, 11, 17), Truong's Adversaries believed that, between August 1995 and

September 1997, Mac Truong had transferred more than $185,000 from certain of the accounts

and that those sums should be accounted for and paid over to Truong's Adversaries, in addition

to the release to them of the funds remaining in the restrained accounts.[1]

The New York Court concluded the April 3, 2000 decision and order by ordering

the Clerk "to enter judgment accordingly." Brooks Dec. Ex. C, at 26.

In his complaint in this action (Brooks Dec. Ex. A, ¶¶ 4-5, 9-10), Mac Truong

now contends, contrary to Justice Cozier's clear ruling, that, of the $4,500,000 of assets in the

interpleaded accounts (all of which Schwab transferred to Truong's Adversaries in March 2003),

Justice Cozier's April 3, 2000 decision only declared Truong's Adversaries to be the owners of

assets totaling $192,570.46. Accordingly, in Mac Truong's view, Schwab should be liable to

him for transferring out "any assets in excess of $192,570.46." Id. ¶ 10. Back in May 2000,

however, when he filed the pre-argument statement in connection with his appeal from the April

3, 2000 decision and order (Brooks Dec. Ex., F), Mac Truong acknowledged the sweeping nature

of that ruling. As he stated at that time, the "damages granted" amounted to "$4,300,000.00 of

---

[1]     The hearing before the Special Referee never took place. As the attorney for Truong's
Adversaries explained to Justice Ira Gammerman on September 25, 2002 (during the hearing in
which – as discussed, *infra* – Justice Gammerman directed Schwab to pay over all of the
restrained funds to Truong's Adversaries), the purpose of the accounting was to determine how
to divide the funds up between Vishipco and Dai Nam and to determine if Mac Truong should
have to pay Truong's Adversaries any further costs or surcharges above and beyond the funds in
the restrained accounts. *See* Brooks Dec. Ex. E, at 11. As this Court noted, Justice Gammerman
"determined that an accounting was not necessary, and directed the Funds be turned over to
Vishipco Lines and Dia [sic] Nam." *Vishipco*, 2003 U.S. Dist. LEXIS 4082, at *22.

plaintiff's assets [which] were awarded to third-party interpleaded defendants-respondents."

Brooks Dec. Ex. F, at 2.  Further, Mac Truong stated that:

> On April 3, 2000 the Lower Court, deciding respondents'
> motion for summary judgment, found that plaintiff did
> earn and possess all the interpleaded assets which had
> been recovered by him through his hard work and labor
> and at his own risk and expenses.  However, the Court
> (erroneously as a matter of fact and law) found that
> plaintiff had taken his share without his principal's
> consent in 1995 and therefore forfeit [sic] all plaintiff's
> share to the recovered assets, amounting to an amount of
> about $4,300,000.00 as of March 17, 2000.

*Id*. at 2-3.

On December 13, 2001, the Appellate Division affirmed Justice Cozier's April 3,

2000 order.  After noting that the lower court had granted the summary judgment motion of

Truong's Adversaries "for a declaration that [Vishipco] and [Dai Nam] are the lawful owners of

the interpleaded funds," the Court upheld Justice Cozier's finding that Mac Truong had breached

the fiduciary duty he owed Truong's Adversaries by transferring funds from their corporate

accounts into accounts in his name, attempting to transfer the remainder of those funds to his

personal accounts, and providing misleading information to his principals, including false

information as to the balances of the accounts.  *Truong v. Charles Schwab & Co., Inc.*, 289

A.D.2d 98, 735 N.Y.S.2d 15, 16 (1st Dep't 2001).  Accordingly, the Court concluded: "Since, in

view of the foregoing, it is clear as a matter of law that plaintiff breached his fiduciary

obligations to his principals, the third-party interpleaded defendants, *the motion court properly*

*found that plaintiff was not entitled to any portion of the disputed funds as a commission.*" *Id.*
(emphasis supplied) (internal citation omitted).[2]

Schwab did not immediately release the disputed funds to Truong's Adversaries
because, *inter alia*, Mac Truong and his wife had filed for bankruptcy in New Jersey in July
2000 and that proceeding continued until October 23, 2002, when, in response to Schwab's
request for permission to release the funds, the bankruptcy court dismissed the bankruptcy
because "the debtor hasn't moved its case forward not even a quarter of an inch." *Vishipco*, at
*7-8. Also, in October 2001, the "Government of Vietnam," allegedly represented by Richard
Zweig (described by one court as an "attorney-colleague" of Mac Truong (*Matter of Mac
Truong*, 22 A.D.3d 62, 64, 800 N.Y.S.2d 12, 14 (1st Dep't 2005)), intervened in the New York
Action, claiming that Vietnam was the successor in interest to Vishipco and that it, rather than
Vishipco and Dai Nam, was, therefore, the rightful owner of the disputed funds. *See Vishipco*, at
*8.

On September 25, 2002, a hearing was held before Justice Ira Gammerman, who
had replaced Justice Cozier as the judge in the New York Action. The court dismissed
Vietnam's claims on the grounds that it had failed to produce certain documents and a witness

_____

[2]     All of the funds in all of the accounts, including the personal and IRA accounts in Mac
Truong's name and the accounts in the names of his wife and children, were "disputed." That is
why all those accounts were restrained, as set forth in the Stipulation and Order (Brooks Dec. Ex.
B), and that is why Mac Truong was twice held in contempt by Justice Gammerman for
attempting to transfer funds from the disputed personal accounts at Schwab to other financial
institutions. *Tran*, 2007 U.S. Dist. LEXIS 10973, at *11; *Vishipco*, 2003 U.S. Dist. LEXIS 4082,
at *29. *See* Brooks Dec. Exs. G, at 3-4, 13, H, and I, at 5 (demonstrating that Mac Truong was
twice held in contempt of court for transferring funds from the custodial account for his son;
from his joint account with his wife; from his IRA account; and from an account in his own
name).

for a deposition. Brooks Dec. Ex. E, at 3. The court then stated, "We now have a case, as I recall, that has been resolved to a substantial degree by Judge Cozier." *Id.* After denying a motion by Mac Truong's son, Hugh Mac Truong, to intervene, *id.* at 3-5, the court engaged in the following colloquy with the attorney for Truong's Adversaries:

> MR. LEVY:   Your Honor, Justice Cozier disssmised [sic] every single claim that Dr. Truong made to any of these funds in April of 2000. What he said and his words that Truong has forfeited all rights to commissions as a result of wrongdoing.
>
> December 13th, 2001 the Appellate Division affirmed unanimously and held, I am quoting again, "since it is clear as a matter of law, that plaintiff Mac Truong breached his fiduciary obligations to his principals, the third-party interpleaded defendants, the motion [court] properly found that plaintiff was not entitled to any portion of the disputed funds as a commission."
>
> Your Honor - -
>
> THE COURT: *Clearer than that.*
>
> *Where's the money now?*
>
> MR. LEVY:    Being held by Charles Schwab.
>
> THE COURT: *All I have to do is direct Charles Schwab to turn it over to your client.*
>
> MR. LEVY:    That's it.
>
> THE COURT: *I so direct Schwab.*

*See* Brooks Dec. Ex. E, at 7-8 (emphasis supplied).

Justice Gammerman refused the request by Mac Truong's attorney to "stay filing a notice of appeal" and reiterated: "I am directing Schwab to turn the money" (not $192,570.46, or any other specific sum) "over to [Mr. Levy's] clients." *Id.* at 8. The court "so ordered" the

transcript the next day. *See* Brooks Dec. Ex. E, at 12. That September 26, 2002 order was never appealed (*see Tran*, at *10-11), nor did Mac Truong seek reconsideration of the order or a stay of its effectiveness from the Appellate Division.

Although Mac Truong now contends that Justice Gammerman was not ordering Schwab to turn over all of the interpleaded funds to Truong's Adversaries, Mac Truong's own attorney, who was representing Mac Truong at the September 25, 2002 hearing, clearly understood the plain meaning of the court's ruling. As Mac Truong's attorney protested (in blatant disregard of Justice Cozier's April 3, 2000 decision, which was affirmed by the Appellate Division): "Your Honor has no basis to assume that every penny in the interpleaded funds are traceable to the recovery in 1977 and that Dr. Truong never put any of his own money into any of those accounts. You are now turning over his money without an accounting. There is no way for the Court to make that determination." Brooks Dec. Ex. E, at 11.

In response, the attorney for Truong's Adversaries pointed out that the request for an accounting had come from his clients, not from Mac Truong, and that the purpose of the accounting was "to see if the plaintiff is required to pay any other further cost or surcharges [and] how to divide the money up between the two corporate third-party defendants [Vishipco and Dai Nam]. This is not an accounting to see if he's owed any money. This accounting is to see if he has to pay any *more* money." *Id.* (Emphasis supplied). Even though Mac Truong's attorney persisted in his objection to Schwab's being directed to turn over all of the disputed assets to Truong's Adversaries – "He has five personal accounts as part of his interpleaded funds. He was not forfeiting his own money." – the court declined to alter its ruling. *Id.* at 12. Not surprisingly, this Court has twice held that the September 26, 2002 order extended to all of the funds in the seven restrained accounts. *See Tran*, at *10-11 ("This long accounting never

PHDATA 3032503_1

occurred. Instead, following the reassignment of the case to Justice Gammerman, *the Court ordered Schwab to release all of the funds to the third-party defendants*.") (emphasis supplied); *id.* at *22, *25, *33 (same); *Vishipco*, at *22 ("[O]n September 26, 2002, the state court, after recognizing the state appellate decision holding that *Mac Truong 'was not entitled to any portion of the disputed funds* as a commission,' determined that an accounting was not necessary, and *directed the Funds be turned over to Vishipco Lines and Dia [sic] Nam*") (emphasis supplied).[3]

### The Six Southern District Actions

Rather than appealing the September 26, 2002 order, Mac Truong filed six lawsuits in this Court (the "Six Southern District Actions") against Schwab and its attorneys, one purportedly on behalf of Vishipco, Dai Nam and other Vietnamese shipping companies, and the other five on behalf of each of the account holders of the five personal accounts maintained at Schwab (Mac Truong's personal account, his IRA account, his joint account with his wife, his custodial account for his son, and his custodial account for his daughter). The Six Southern District Actions alleged that Schwab and its attorneys had improperly handled assets in the seven restrained accounts and had conspired to restrict the plaintiffs' access to their property in those accounts through misrepresentations or false pretenses. *Vishipco*, at *2. Contemporaneously, Mac Truong filed a "virtually identical action" in the United States District Court for the District of New Jersey (the "New Jersey Action"), on behalf of himself and his wife, against Schwab and its attorneys, including Schwab's local New Jersey counsel. *Id.*

---

[3]    The "Funds" were the funds in the seven accounts that were the subject of the New York Action (*Vishipco*, at *5-6), the same funds that are the subject of this action. *Compare* Brooks Dec. Ex. A (the complaint), ¶ 3 *with* Brooks Dec. Ex. B (the Stipulation and Order), ¶ 2.

PHDATA 3032503_1

On March 19, 2003, this Court dismissed the Six Southern District Actions on the grounds of collateral estoppel and *res judicata*; sanctioned Mac Truong for bad faith, vexatious litigation pursuant to 28 U.S.C. § 1927; and enjoined him from bringing any further actions against Schwab or its attorneys without leave of court (and without bringing the injunction to the attention of the court from which leave was sought). *Vishipco*, at *35-36. As the Court noted, "This dispute has spanned two continents and more than a score of litigations. The time has drawn nigh to attempt to resolve it once and for all." *Id.* at *3-4. And, yet, four and one-half years later, to quote Yogi Berra, "it's *déjà vu* all over again."

In holding that the Six Southern District Actions were precluded by the doctrine of collateral estoppel, this Court held that the funds that were in dispute in the New York Action "are the same Funds that are in dispute in the present action." *Id.* at *12. The Court also pointed out that the New York Court had "declared Vishipco Lines and Dai Nam 'the lawful owners of the interpleaded assets.'" *Id.* at *13. Accordingly, this Court explained, "the New York courts have conclusively determined that not only did Schwab properly handle the Funds and properly denied plaintiffs access to the Funds, but also that *Mac Truong had no right to any portion of the Funds*." *Id.* (emphasis supplied). The Court held that Mac Truong and those in privity with him had a full and fair opportunity to litigate those issues in the New York Action and that the issues decided adversely to Mac Truong by the New York Court were decisive in the Six Southern District Actions, requiring their dismissal on the grounds of collateral estoppel. *Id.* at *13-17.

Similarly, this Court held, the doctrine of *res judicata* barred the relitigation, in the Six Southern District Actions, of claims arising out of the same transaction or series of transactions that had been conclusively resolved in the New York Action, even if the newly asserted claims were based upon different theories or sought a different remedy. *Id.* at *19-21.

PHDATA 3032503_1

As the Court observed, *res judicata* applied because the September 26, 2002 order "resulted in a valid final judgment -- as the parties conceded at the December 5, 2002 oral argument -- and neither party has appealed that judgment." *Id.* at *20.

### The New Jersey Action

The Court denied Schwab's motion to enjoin the prosecution of the virtually identical New Jersey Action. *Id.* at *2-3.[4]  Schwab and its attorneys then moved to have the New Jersey Action transferred to this Court pursuant to 28 U.S.C. § 1404(a).  After the case was transferred, *Tran*, at *1, Mac Truong and his wife filed a second bankruptcy proceeding in New Jersey in 2004, resulting in the stay of the transferred action (and of Mac Truong's appeals from this Court's March 19, 2003 opinion and order). *Tran*, at *12-13, n.6.

After the stay was lifted, Schwab and its attorneys moved, pursuant to Rule 12(c), Fed. R. Civ. P., for judgment on the pleadings, dismissing the transferred New Jersey Action on the grounds of collateral estoppel and *res judicata*.  In granting the motion, Judge Castel, to whom the case had been reassigned, noted that, in reviewing a Rule 12(c) motion, the Court employs the same legal standard as applies to the more familiar motion to dismiss under Rule 12(b)(6). *Tran*, at *18.

---

[4]     The complaint in the New Jersey Action largely duplicated the allegations in the Six Southern District Actions, claiming that Schwab conspired with Truong's Adversaries to deprive Mac Truong and his wife of access to, and ownership of, the disputed accounts, having a total value of $4.5 million.  In addition, in the New Jersey Action, it was contended that this conspiracy included the filing of false claims with the New Jersey bankruptcy court in the course of the Truongs' first bankruptcy proceeding, which commenced in July 2000, shortly after Justice Cozier's ruling, and was dismissed in October 2002. *Tran*, at *12, n.5, *14-17.

PHDATA 3032503_1

Collateral estoppel applied, the Court held, because Mac Truong and his wife were "attempting to relitigate the previously decided issues relating to ownership of the funds." *Id*. at *20. Specifically, the Court ruled, the April 3, 2000 order, as affirmed, conclusively determined "that Vishipco and Dai Nam -- and not Truong -- were the lawful owners of the funds in the disputed accounts" and the September 26, 2002 order determined that Schwab was "obligated to release the funds in the accounts to Tran's principals, Vishipco and Dai Nam." *Id*. at *22. The Court made it clear that the April 3, 2000 order applied to every penny in every one of the seven disputed accounts: "In addition, Tran's principals' ownership of the funds valued at $4.5 million -- and Truong's lack thereof -- was decided in favor of Tran, Vishipco and Dai Nam in the New York action." *Id*.

Continuing the collateral estoppel analysis, the Court held that Mac Truong and his wife had a full and fair opportunity to litigate the issue of the ownership of the disputed funds in the New York Action, having appealed "the final summary judgment decision on liability" rendered by the New York Court on April 3, 2000, and having been "rebuffed" by the Appellate Division. *Id*. at *24. And, the Court held, although "Truong never appealed Justice Gammerman's September 26, 2002 Order releasing the account funds to the third-party defendants, neither the formal entry of a final judgment nor the presence of an appeal is necessary for a New York judgment to have preclusive effects." *Id*. at *24-25.

Finally, the Court concluded, the issues resolved in the New York Action – "The New York courts conclusively determined that plaintiffs have no ownership interest in the accounts. . . . and that Tran's principals are the lawful owners of the accounts" – were decisive in the New Jersey Action. *Id*. at *25. Accordingly, all of the claims against Schwab and its attorneys were barred by the doctrine of collateral estoppel. *Id*. at *29.

13

The Court next held that the doctrine of *res judicata* barred all but one of the claims asserted against Schwab in the New Jersey Action. *Id*. at *30-33. That claim related to conduct that allegedly occurred in the bankruptcy court and post-dated the adverse grant of summary judgment on liability by the New York Court. Though barred by collateral estoppel, that claim was not precluded on the basis of *res judicata* by the New York Action. *Id*. at *32, n.7.

The *Tran* Court held, however, that all of the claims against Schwab and its attorneys, including the claim involving alleged conduct in the New Jersey bankruptcy court, were precluded, under principles of *res judicata*, by this Court's disposition of the Six Southern District Actions. As the Court reasoned, the actions were nearly contemporaneous, "and there is no reason why plaintiffs could not have raised these claims against the Schwab defendants in those complaints." *Id*. at *34.

### The Denial of Mac Truong's Motion to Amend His Complaint in the New Jersey Action

As acknowledged in his complaint in this action, Mac Truong tried, unsuccessfully, to amend his complaint in the transferred New Jersey Action. *See* Brooks Dec. Ex. A, ¶ 6. That motion to amend was made, on September 30, 2006, as a cross-motion to Schwab's motion for judgment on the pleadings. *See* Brooks Dec. Ex. J (notice of cross-motion, excerpts from Mac Truong's 64-page supporting affirmation, and proposed amended complaint). In support of the motion to amend, Mac Truong contended that the initial complaint, filed in November 2002, only charged Schwab with having wrongfully restricted the seven accounts (a "construed conversion"), but that an amendment should be permitted in order to allege that, after

14                                          PHDATA 3032503_1

the initial complaint, Schwab had actually transferred all of the assets out of those restricted accounts (an "actual conversion"). *See* Brooks Dec. Ex. J, at 60-61.

The proposed amended complaint – just like the complaint in this action – included seven claims of conversion (one for each of the transferred accounts) and an eighth claim arising under 42 U.S.C. § 1983 (as well as a ninth claim, not contained in this complaint, under 42 U.S.C. § 1985). *Id.* (proposed amended complaint), ¶¶ 52-78. Just like the complaint in this case, the proposed amended complaint accused Schwab of converting $4.5 million of assets in the same seven accounts by transferring them out without Mac Truong's consent and without any court order authorizing such a transfer. *Id.* ¶¶ 17-24, 33, 36, 38, 44.

Judge Castel denied the motion to amend the complaint on the grounds of futility, because the proposed amendment made "all of the same allegations of fraud and conversion of the Schwab accounts that have been repeatedly rejected by every court to which Mac Truong has brought these claims." *Tran*, at *38-39. The proposed amended complaint "would not withstand a motion to dismiss for the same reasons the present complaints cannot withstand a motion to dismiss," requiring the denial of the motion. *Id.*

### The Motion to Reopen the New York Action or for Clarification of the September 26, 2002 Order

In July 2007, Mac Truong moved to reopen the New York Action and for clarification of the September 26, 2002 order. *See* Brooks Dec. Ex. A, ¶ 7. At a hearing on August 16, 2007, Justice (now Judicial Hearing Officer) Gammerman denied the motion. *See* Brooks Dec. Ex. K, at 10, 11. In passing, however, the court casually stated: "My suggestion is, if you maintain that Schwab improperly turned over money that belonged to you unrelated to any

PHDATA 3032503_1

of the monies that you collected in connection with this claim of these shipping lines, you start a lawsuit against Schwab in an appropriate court and that issue can be litigated * * *  But it's not going to be litigated within the framework of this lawsuit." *Id.* at 7.

Armed with this statement, Mac Truong moved, pursuant to Rule 60(b)(2), Fed. R. Civ. P., for relief from the judgments in *Vishipco* and *Tran*.  While the motion, labeled one for "reconsideration," was denied in *Vishipco* for lack of jurisdiction due to the pendency of Mac Truong's appeals, Judge Castel addressed the merits because two of the appeals from the *Tran* opinion had been withdrawn.  *See*  Brooks Dec. Ex. L, at 2.  The Court held that Justice Gammerman had denied Mac Truong's motion, and that "[n]o aspect of this ruling modifies the substance or effect of the prior rulings in that case releasing the funds to Truong's adversaries." *Id.* at 5.  In conclusion, the Court ruled:  "The Rule 60(b)(2) motions that are before me are denied.  Truong has proffered no 'highly convincing' evidence of facts existing at the time of my prior decision that would change or alter the result of the ruling.  Justice Gammerman, in denying Truong's motion, left intact and unchanged the previous opinions and orders in the state court litigation.  Nothing has changed since [the date of the prior decision], and no new evidence has been discovered." *Id.* at 5-6.

## ARGUMENT

### I.     The Complaint Should be Dismissed Based upon the Doctrines of Collateral Estoppel and *Res Judicata*

#### A.     The Applicable Legal Standard

When presented with a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Weinstein v. Albright*, 261 F.3d 127, 131 (2d Cir. 2001).

16                         PHDATA 3032503_1

The complaint may only be dismissed if the plaintiff fails to provide factual allegations needed to render his claim plausible. *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). *Pro se* pleadings are to be liberally construed and are read to "raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

Nevertheless, dismissal "is appropriate when a defendant raises claim preclusion . . . as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000); *see Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (same). Rule 201(b), Fed. R. Evid. permits judicial notice to be taken of adjudicative facts, "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," such as the court decisions, transcripts and filings annexed to Schwab's moving papers. Moreover, the Court may take judicial notice of facts reflected in the consistent accounts set forth in prior judicial opinions. *See Ambase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003).

**B.    The Doctrine of Collateral Estoppel Requires the Dismissal of the Complaint**

Collateral estoppel, or "issue preclusion," "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Cobb v. Pozzi*, 363 F.3d 89, 113 (2d Cir. 2004) (internal quotations and citations omitted). A federal court determining the preclusive effect of a prior adjudication of an issue in a state court applies the collateral estoppel law of the state from which the earlier judgment was rendered. *See Hoblock v. Albany County Bd. of Elecs.*, 422 F.3d 77, 93 (2d Cir. 2005). Therefore, in considering the preclusive effect of the rulings in the New York Action on the claims raised in this action, New York law applies. Under New York law, collateral estoppel

17

"may be invoked to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate," and (3) "the issue that was raised previously must be decisive of the present action." *Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) (internal quotations and citations omitted).

At least two issues were decided in the New York Action, after a full and fair opportunity for the parties to be heard, that are dispositive of this case. First, it was decided that Mac Truong had no ownership interest whatsoever in the seven interpleaded accounts that Schwab is accused, in this complaint, of turning over to Truong's Adversaries in March 2003. Second, it was determined that Schwab was obligated to release those funds, in their entirety, to Truong's Adversaries without an accounting.

As to the first issue, on April 3, 2000, Justice Cozier declared Truong's Adversaries the "lawful owners of the interpleaded assets" (Brooks Dec. Ex. C, at 23) and found that "[a]ll of the interpleaded funds on deposit in the various Schwab accounts are traceable to the original recovery proceeds, together with interest, dividends and other accretions." *Id.* at 20-21. Because all of the funds in all seven accounts were "traceable to the original recovery proceeds," Mac Truong's breach of the fiduciary duty he owed his principals, committed when he transferred funds from the Vishipco account to his personal accounts, resulted in the forfeiture of his right to every penny in all seven of the interpleaded accounts. Mac Truong understood the global nature of the April 3, 2000 ruling, as manifested by the pre-argument statement he submitted in connection with his appeal from that ruling in May 2000, recognizing that the court had held that he had forfeited his entire share of the recovered assets, amounting to approximately $4.3 million. Brooks Dec. Ex. F, at 2-3. The Appellate Division, in affirming

18

the April 3, 2000 order, left no doubt about the scope of the forfeiture, holding that, in view of

Mac Truong's breach of his fiduciary obligations to his principals, "the motion court properly

found that plaintiff was not entitled to any portion of the disputed funds as a commission."

*Truong v. Charles Schwab*, 289 A.D.2d at 98, 735 N.Y.S.2d at 16.

It is sophistry to pretend, as Mac Truong does, that the April 3, 2000 order and the

Appellate Division order affirming that order were limited to funds totalling $192,570.46, or that

those orders applied only to the two corporate accounts and not to the five personal accounts, all

of which contained funds that were traceable entirely to the original recovery proceeds that Mac

Truong had obtained on behalf of the principals whom he later betrayed.  As this Court held, in

dismissing the Six Southern District Actions, the New York Action had "conclusively

determined" that "Mac Truong had no right to any portion of the Funds."  *See Vishipco*, at *13.

The "Funds" referred to by this Court in *Vishipco* were precisely the same funds that were

involved in the New York Action (*id.*, at *5-6, *12) and that are the subject of this action.

*Compare* Brooks Dec. Ex. A, ¶ 3 *with* Brooks Dec. Ex. B, ¶ 2.  Any other reading of the rulings

in the New York Action is absurd: All seven of the accounts were "disputed."  That is why all of

the accounts were restrained (Brooks Dec. Ex. B, ¶ 2) and that is why Mac Truong was twice

held in contempt of court by Justice Gammerman for transferring funds from four of the disputed

personal accounts (the custodial account for his son, the joint account with his wife, his IRA

account, and an account in his own name) to other financial institutions.  *See* Brooks Dec. Exs.

G, H & I; *Tran*, at *11; *Vishipco*, at *29.  *See also Tran*, at *22 ("Tran's principals' ownership of

the funds valued at $4.5 million -- and Truong's lack thereof -- was decided in favor of Tran,

Vishipco and Dai Nam in the New York action."); *id.* at *25 (same).

PHDATA 3032503_1

As to the second issue, it is incontrovertible that Justice Gammerman directed Schwab to turn over all of the funds in all seven accounts to Truong's Adversaries.  On September 25, 2002, after hearing that the Appellate Division had ruled that Mac Truong "was not entitled to any portion of the disputed funds," Justice Gammerman stated: "Clearer than that. Where's the money now?"  Brooks Dec. Ex. E, at 7.    Upon learning that "the money" was on deposit at Schwab, the court stated:  "All I have to do is direct Charles Schwab to turn it over to your client [Truong's Adversaries]" and "I so direct Schwab."  *Id.* at 7-8.  Mac Truong's lawyer, who was present at the September 25, 2002 hearing, remonstrated with Justice Gammerman that "[t]here is no way for the Court to make th[e] determination" to turn over "every penny in the interpleaded" accounts, including Mac Truong's "own money" which he had supposedly put into the "five personal accounts," "without an accounting."  *Id.* at 11.  After the lawyer for Truong's Adversaries explained that the accounting called for by the April 3, 2000 order (Brooks Dec. Ex. C, at 25) was only intended to determine the division of the disputed assets as between Vishipco and Dai Nam and, also, whether Mac Truong owed additional sums above and beyond the sums remaining in the restricted accounts, the court adhered to its ruling.  Brooks Dec. Ex. E, at 11.

In dismissing the New Jersey Action and the Six Southern District Actions, this Court has given Justice Gammerman's ruling ("so ordered" the next day, September 26, 2002) precisely that interpretation.  *See Tran*, at *10-11 ("This long accounting never occurred. Instead, following the reassignment of the case to Justice Gammerman, the Court ordered Schwab to release all of the funds to the third-party defendants."); *id.* at *22, *25, *33 (same); *Vishipco*, at *22 ("[O]n September 26, 2002, the state court, after recognizing the state appellate decision holding that Mac Truong 'was not entitled to any portion of the disputed funds as a commission,' determined that an accounting was not necessary, and directed the Funds be turned

PHDATA 3032503_1

over to Vishipco and Dia [sic] Nam.") (Again, "Funds" was a defined term, referring to the funds in all seven of the accounts that were the subject of the New York Action. *Id.* at *5-6.)

The decision by Justice Gammerman on August 16, 2007, denying Mac Truong's motion to reopen the New York Action and for clarification of the September 26, 2002 order, did not in any way change the New York Court's determination. As Judge Castel ruled, in denying Mac Truong's motion for "reconsideration" of the dismissal of the New Jersey Action, the August 16, 2007 ruling by Justice Gammerman did not modify "the substance or effect of the prior rulings in that case releasing the funds to Truong's adversaries" and the denial of the motion to reopen or for clarification "left intact and unchanged the previous opinions and orders in the state court litigation." *See* Brooks Dec. Ex. L, at 5. Significantly, as the Court also noted, "Schwab complied with [the September 26, 2002] Order and released *all* of the interpleaded funds to Truong's adversaries." *Id.* at 4 (emphasis supplied).

As previously held by this Court, in both *Vishipco*, at *13-16, and *Tran*, at *23-25, Mac Truong had a full and fair opportunity to litigate these two determinative issues in the New York Action. The April 3, 2000 order, which directed the clerk to enter judgment (Brooks Dec. Ex. C, at 26), was unsuccessfully appealed to the Appellate Division, which rejected Mac Truong's contentions. Even though judgment was never actually entered, "the formal entry of a final judgment" is not "necessary for a New York judgment to have preclusive effects." *Tran*, at *24-25, *citing Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 268 (2d Cir. 1997); *see also Thaler v. Casella*, 960 F. Supp. 691, 698 (S.D.N.Y. 1997) (under New York law, "[t]he fact that the decision was rendered upon an order does not preclude it from serving as the basis for preclusion."); *Vavolizza v. Krieger*, 33 N.Y.2d 351, 357, 352 N.Y.S.2d 919, 923 (1974) ("an order made upon a motion provides such a 'judgment' as will bar relitigation under the doctrines

of *res judicata* and collateral estoppel so long as the requisites of identity of issue and opportunity to contest are present.")

As to the September 26, 2002 order, although it never resulted in the entry of a formal judgment, Mac Truong conceded, at the oral argument of the motion to dismiss the Six Southern District Actions, that it was, indeed, a "valid final judgment." *See Vishipco*, at *20. Although Mac Truong never appealed the September 26, 2002 order, "the presence of an appeal" is not necessary for that order to have preclusive effect. *Tran*, at *24-25, *citing Jacobson v. Fireman's Fund*, 111 F.3d at 268; *see also Slater v. American Mineral Spirits Co.*, 33 N.Y.2d 443, 447, 354 N.Y.S.2d 620, 622 (1974) (order finally disposing of a claim, from which no appeal was taken, was entitled to preclusive effect even though final judgment was not formally entered).

The resolution of these two issues is decisive of the present action, which asserts that Schwab wrongfully transferred assets belonging to Mac Truong to Truong's Adversaries. The New York Action "conclusively determined that [Mac Truong had] no ownership interest in the accounts" and that "Tran's principals [were] the lawful owners of the accounts." *See Tran*, at *25. Moreover, "[t]he September 26, 2002 Order compelled Schwab to release the funds to Truong's adversaries." *Id.* Those key issues are decisive to, and may not be relitigated in, this action, requiring the dismissal of this complaint on the grounds of collateral estoppel.

In addition, the dismissals of the Six Southern District Actions and the New Jersey Action by this Court also have collateral estoppel effect, under the same principles of New York law. *See Semtek Int'l v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09 (2001) (preclusive effect of any decision by a federal court, sitting in a diversity action, is determined by the applicable preclusion law of the state in which the district court sat). While the appeals from

PHDATA 3032503_1

those decisions have been languishing for years, the pendency of those appeals does not deprive this Court's rulings of their preclusive effect. *See American Med. Ass'n v. United Healthcare Corp.*, 00 Civ. 2800 (LMM), 2006 U.S. Dist. LEXIS 93864, at *60 (S.D.N.Y. Dec. 29, 2006).

### C.    The Doctrine of *Res Judicata* Requires the Dismissal of the Complaint

"Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." *See Marvel Characters v. Simon*, 310 F.3d 280, 286-87 (2d Cir. 2002). Under either federal or New York law, "once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning 'the transaction, or series of connected transactions, out of which the [first] action arose.'" *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (internal citation omitted). "'Also dispositive to a finding of preclusive effect, is whether an independent judgment in a separate proceeding would impair or destroy rights or interests established by the judgment entered in the first action.'" *Marvel Characters*, 310 F.3d at 287 (internal quotations omitted).

In *Tran*, at *34, Judge Castel held that the New Jersey Action against Schwab was barred, on the grounds of *res judicata*, by the disposition in the Six Southern District Actions. As the Court reasoned, the claims arose out of the same transactions or series of transactions, and there was no reason the plaintiffs in the New Jersey Action could not have raised those claims in the earlier, but nearly contemporaneous Southern District Actions. *Id.* Similarly, because the New Jersey Action was not dismissed until February 2007, the claims asserted in this action, that Schwab actually transferred the disputed accounts to Truong's Adversaries in March 2003, could easily have been litigated in that action. Not only could those claims have been asserted in the New Jersey Action, but Mac Truong actually moved to amend his complaint to assert them (*see*

Brooks Dec. Ex. J).  The motion to amend was denied on the grounds of futility, because the amended complaint could not withstand a motion to dismiss.  *Tran*, at *38-39.  The complaint in this action, alleging the very same futile claims, runs afoul of the doctrine of *res judicata* by seeking to relitigate the viability of claims deemed futile in the New Jersey Action, which is on appeal.  If Judge Castel erred in denying Mac Truong's motion to amend, that error should be corrected by the Second Circuit, not through relitigation in this action.

For the same reasons, the claims asserted in this action seek to "impair or destroy rights or interests established by" Justice Gammerman's September 26, 2002 order directing Schwab to release all of the funds to Truong's Adversaries.  *Marvel Characters*, 310 F.3d at 287.  Accordingly, the New York Action also bars this action under the doctrine of *res judicata*.

## II.    The Conversion Claims are Time-Barred and Must be Dismissed

New York has a three-year statute of limitations for conversion claims, running from the date of the actual conversion.  *See* N.Y. C.P.L.R. § 214[3]; *Meadowbrook-Richman, Inc. v. Associated Financial Corp.*, 325 F. Supp. 2d 341, 365 (S.D.N.Y. 2004); *Rodgers v. Roulette Records, Inc.*, 677 F. Supp. 731, 736 (S.D.N.Y. 1988).  An action for conversion accrues, for statute of limitations purposes, from the date the conversion takes place, and not from discovery or the exercise of diligence to discover.  *Vigilant Ins. Co. of Am. v Housing Auth. of City of El Paso, Tex.*, 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 347 (1995).  Accordingly, the seven conversion claims, which accrued in March 2003, are time-barred and must be dismissed.

## III.    The Claim under 42 U.S.C. § 1983 Must be Dismissed on Statute of Limitations Grounds and Because it Fails to State a Valid Claim for Relief

The claim under 42 U.S.C. § 1983 is also barred by a three-year statute of limitations.  *Plumey v. New York State*, 389 F. Supp. 2d 491, 497 (S.D.N.Y. 2005) (borrowing New York's three-year statute of limitations for personal injury actions); *Blankman v. The*

*County of Nassau*, 819 F. Supp. 198, 206-07 (E.D.N.Y. 1993) (same). The claim accrues when the plaintiff "knows or has reason to know" of the injury (*id.*), in this case upon Mac Truong's admitted receipt of at least some of the March 2003 statements from Schwab, which divulged and put him on notice of the transfers. *See* Brooks Dec. Ex. J (proposed amended complaint), ¶ 24. Hence, the § 1983 claim is time-barred and must be dismissed.

In addition, the § 1983 claim must be dismissed because Schwab is a private party, and is not alleged, in the complaint, to be a "state actor," as required by that statute. *See Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 170-71 (S.D.N.Y. 2006); *Poucher v. Intercounty Appliance Corp.*, 336 F. Supp. 2d 251, 253 (E.D.N.Y. 2004).

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed and Schwab should be awarded such other and further relief as appears just and proper.

Dated: New York, New York
        December 19, 2007

Respectfully submitted,

SCHNADER HARRISON SEGAL & LEWIS LLP

By: _____
        Daniel J. Brooks (DB-3136)
        140 Broadway, Suite 3100
        New York, New York 10005
        (212) 973-8000
        fax: (212) 972-8798
        e-mail: dbrooks@schnader.com

Attorneys for Defendant

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                         ) ss.:
COUNTY OF NEW YORK    )

Timothy Clancy, being duly sworn, deposes and says, deponent is not a party to this action, is over eighteen (18) years of age and resides in Monmouth County, New Jersey.  That on the 19th day of December 2007, deponent served the attached MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT upon:

> Mac Truong
> 325 Broadway, Suite 200
> New York, New York 10007

by hand delivery.

Timothy Clancy

Sworn to before me this
19th day of December, 2007

Notary Public

MICHELLE J. HOVE
Notary Public, State of New York
No. 01HO6125278
Qualified in Nassau County
Commission Expires April 11, 20__